MAUS, Respondent, vs. BLOSS, Appellant.

*January 5—February 2, 1954.*

628

For the appellant there were briefs by *Hammond & Hammond,* attorneys, and *Cavanagh, Mittelstaed, Sheldon & Heide* of counsel, all of Kenosha, and oral argument by *Walter W. Hammond* and *Willis R. Hammond.*

For the respondent there was a brief by *Lepp & Phillips* of Kenosha, and oral argument by *Burton Lepp.*

GEHL, J.  Defendant contends that his operation of a mink farm is an enterprise excluded from the operation of the safe-place statute. The statute applies to all places of

employment except, among other operations, "farm labor when the employer is the farmer operating the farm and the labor is such as is customarily performed as a part of farming, and including the transportation of farm products immediately and directly from the farm, and of materials, supplies, or equipment directly to the farm for use thereon." Sec. 101.01 (1) (b), Stats.

In *Eberlein v. Industrial Comm.* 237 Wis. 555, 297 N. W. 429, a case involving the application of the Workmen's Compensation Act, it was held that one engaged in the raising of foxes separately and as a distinct business and apart from a general farming operation is not "farming," and therefore not exempt from liability as an employer under the provisions of the act which provided that it shall not apply to "farmers" or to "farm labor."

In *Cedarburg Fox Farms, Inc., v. Industrial Comm.* 241 Wis. 604, 6 N. W. (2d) 687, the court was called upon to consider whether fox farming constituted farm labor within the meaning of ch. 108, Stats. 1935, the Unemployment Compensation Act, which exempted farmers in its operation in the following language:

". . . except that for the purposes of this chapter an 'employment' shall not include: 1. Employment as a farm laborer; . . ." Sec. 108.02 (e), Stats. 1935.

The court held also that the operator of the fox farm was not in the class of those exempted by the act.

The reasoning of these cases would seem to require the conclusion that the term "farm labor" as it is used in sec. 101.01 (1) (b), Stats., does not include the operation of a mink farm.

One engaged in the operation of a mink farm is not engaged in the customary type of farming as that term is ordinarily understood in this community. As we construe

defendant's argument he does not take serious issue with that determination.

He urges, however, that by enactment of ch. 563, Laws of 1945, the legislature expressed its intent that the raising of fur-bearing animals should be deemed an agricultural pursuit within the meaning of the provisions of the safe-place statute. Ch. 563, Laws of 1945, was made a part of ch. 29 of the statutes and numbered sec. 29.579. It provides:

"The breeding, raising, and producing in captivity, and marketing of foxes, fitch, nutria, marten, fisher, mink, chinchilla, rabbit, or caracul, shall be deemed an agricultural pursuit, and all such animals so raised in captivity or lawfully taken, shall be deemed domestic animals, subject to all the laws of the state with reference to possession, ownership, and taxation as are at any time applicable to domestic animals."

Ch. 29 of the statutes is entitled "Fish and Game" and contains provisions exclusively applicable to fish and game.

We agree with the trial court that the provision quoted from ch. 563, Laws of 1945, cannot be construed as indicating a purpose on the part of the legislature to broaden the exemption provided for farmers by the terms of sec. 101.01 (1) (b), Stats.

Defendant contends that the use of the term "agricultural pursuit" in ch. 563, Laws of 1945, demonstrates the intention of the legislature to "nullify the Eberlein decision," in which the court rejected the claim of exemption upon the ground that the operation there involved was not an "agricultural pursuit;" that the use of the expression in ch. 563, Laws of 1945, must be construed as an indication of the legislature's purpose to make mink farming an agricultural pursuit for all purposes. We do not agree. If the legislature had intended to broaden the exemption for farmers in the provisions of the safe-place statute it might easily have done

so by express reference to the latter as it has done with respect to the exemptions contained in the Unemployment Compensation and Workmen's Compensation Acts.

Prior to 1939, sec. 108.02 (5) (g), Stats., a part of the Unemployment Compensation Act, provided:

"The term 'employment,' except as a given employer elects otherwise with the commission's approval, shall not include:
"1. Employment as a farm laborer."

By ch. 372, Laws of 1939, the term "agricultural labor" as used in the Unemployment Compensation Act was defined to include service performed "on a farm, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife." Thus it appears that when the legislature considered that farmers engaged in the raising of fur-bearing animals should be exempt from the provisions of the Unemployment Compensation Act it did so by amending the specific statutes which provide for unemployment compensation, and expressly made it a part of the act.

Prior to 1945, sec. 102.04 (2), Stats., provided that the provisions of the Workmen's Compensation Act "shall not apply to farmers or to farm labor." By ch. 456, Laws of 1947, sec. 102.04 (4), the term "farmer" was amended by inserting the following:

". . . 'Farmer' means any person, firm, and private corporation engaged in farming as defined. Operation of farm premises shall be deemed to be the planting and cultivating of the soil thereof; the raising and harvesting of agricultural, horticultural, or arboricultural crops thereon; the raising, breeding, tending, training, and management of livestock, bees, poultry, fur-bearing animals, wildlife or aquatic life, or their products, thereon; . . ."

Thus, again, when the legislature considered that the terms "farmer" and "farm labor" should be broadened it did so by amending the specific provisions of the Workmen's Compensation Act, ch. 102.

It is most significant that when the legislature deemed it advisable to broaden the exemption in the Unemployment and Workmen's Compensation Acts, it did so in express terms and by making the amendments part of the respective applicable statutes, and that no such change has been made in the provisions of the safe-place statute.

By ch. 212, Laws of 1953, the legislature added to the provisions of sec. 29.579, Stats., the following:

"All persons engaged in the foregoing activities are farmers and engaged in farming for all statutory purposes."

Defendant concedes, of course, that the added expression which appeared first in 1953 does not of itself affect the question of his liability. He contends, however, that it should not be construed as an amendment; that it was intended as a clarification of sec. 29.579, Stats., rather than as a change. In support of that contention he cites several cases. The cases are distinguishable from the instant one for the reason that there the addition was made, as the courts said, to clarify or remove an ambiguity from the statute of which it was made a part. Those cases may not be read as holding that the amendments involved were intended to reach other unrelated statutory provisions. Furthermore, we see no reason why we must construe the action of the 1953 legislature as a declaration of its intent with respect to the statute as it stood before the amendment. It might as well be argued that the legislature by its act in 1953 recognized that it had not broadened the farmers' exemption sufficiently and deemed it advisable to extend the immunity to a larger area. It seems to us that the latter construction is more reasonable

than that contended for by defendant, and that we may not give the act the arbitrary interpretation which he claims for it. It is the duty of the court to construe a statute as it exists at the time of its application and it is quite generally held that the legislature cannot by a later act establish or affect the construction of a former act. *Moorman Mfg. Co. v. Industrial Comm.* 241 Wis. 200, 5 N. W. (2d) 743; *Dodge County v. Kaiser,* 243 Wis. 551, 11 N. W. (2d) 348.

We conclude, therefore, that the trial court correctly held that the defendant at the time in question was, in his operation of a mink farm, not protected by the exemption extended to farmers under the provisions of sec. 101.01, Stats.

At the trial plaintiff was granted leave to amend his complaint so as to allege a second cause of action—one alleging common-law negligence. The trial court was of the opinion that questions inquiring as to that issue should not be submitted. The judge states that plaintiff's contributory negligence was as a matter of law as great as that of defendant and that therefore the action for common-law negligence must be dismissed. Defendant contends that the court's conclusion requires dismissal also of the original complaint which charges violation of the safe-place statute. We agree with the trial court that for the comparison of negligence there should be applied in a safe-place case a test different from that to be applied in a common-law negligence case. The statute imposes a higher duty upon an employer than does the law respecting common-law negligence. *Mullen v. Larson-Morgan Co.* 212 Wis. 52, 249 N. W. 67; *Delaney v. Supreme Investment Co.* 251 Wis. 374, 29 N. W. (2d) 754; *Saxhaug v. Forsyth Leather Co.* 252 Wis. 376, 31 N. W. (2d) 589.

Defendant's contention, that plaintiff was guilty of at least as high a degree of causal negligence as was he, is based upon the contention that plaintiff could have protected himself by using a pusher block to move the masonite against

the saw. Plaintiff gives as his reason for failing to use a pusher block the fact that the masonite was very thin and that the vibration caused by the meeting of the masonite with the blade of the saw required the use of his hands directly upon the board.

Defendant argues also that plaintiff was negligent in not placing the guard on the saw. It may be assumed that he was and that the jury's finding of contributory negligence was based upon its conclusion that he was at fault in that respect as well as in his failure to use a pusher block. We may not say, however, as a matter of law that his omissions constitute a higher degree of negligence than that which is attributable to defendant. As to the guard, both parties testified that defendant had not told plaintiff of its existence and plaintiff testified that he had never seen it.

Defendant in support of his contention as to comparative negligence relies also upon *Klein v. Montgomery Ward & Co.* 263 Wis. 317, 57 N. W. (2d) 188, and *Frei v. Frei,* 263 Wis. 430, 57 N. W. (2d) 731. The safe-place statute was not involved in the *Frei Case.* What the court there says about the comparative negligence of the parties is said with respect to plaintiff's cause of action based upon common-law negligence. In the *Klein Case* the plaintiff was a patron in defendant's store. One of the latter's employees had unrolled a length of wire fencing on the floor. Plaintiff saw the fencing and decided to walk on and across it. He tripped and fell. He could have walked around it. This court in denying recovery laid particular emphasis upon the latter stated fact. In the instant case it appears that plaintiff was injured while in the act of turning his body so as to avoid being struck by the object which flew toward him from the saw. It cannot be said that he made the choice of action which caused his injury. In any event, it cannot be said as a matter of law that his conduct was so similar to that of plaintiff in the *Klein Case* as to make the rule of that case

636

applicable. We consider that the matter of comparison was properly submitted to the jury and that we may not disturb its finding.

*By the Court.*—Judgment affirmed.