STATE EX REL. BOULTON and others, Petitioners, v. ZIM-
MERMAN, Secretary of State, Respondent.

*October 6—October 27, 1964.*

460

For the petitioners there was a brief by *Dominic H. Frinzi* and *Nicholas C. Catania,* both of Milwaukee, and oral argument by *Mr. Catania.*

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, and *David McMillan,* assistant attorney general.

PER CURIAM. The principal issue presented is whether nomination papers can be validly circulated and filed nominating a complete slate of 12 independent presidential electors, or whether a separate nomination paper must be circulated and filed for each of the 12 nominees.

Under sec. 1, art. II, United States constitution, Wisconsin is entitled to 12 presidential electors, since 12 is the total number of our members in the United States house of representatives and senate. The names of the candidates for

presidential elector do not appear on the ballot but only the names of the candidates for President and Vice-President for whom the electors are pledged to vote. Sec. 9.04, Stats., provides, "A vote for the presidential and vice presidential nominees of any party is a vote for the electors of such nominees."

Established political parties, which have succeeded in nominating candidates for the legislature at the September primary, nominate their presidential electors at their state platform conventions, and such nominations are then certified to the secretary of state. Sec. 5.36, Stats. There is, however, no separate statutory provision applying to the method of nominating independent candidates for presidential electors in behalf of a party such as the Socialist Workers Party which failed to nominate candidates for the legislature at the September primary and thus does not have available to it the machinery of a platform convention by which to nominate its presidential electors. Thus the only applicable statute is sec. 5.19, which covers all independent nominations. Cf. 1 Op. Atty. Gen. (1912) 215, and 25 Op. Atty. Gen. (1936) 610, which opinions were rendered under predecessor statutes to sec. 5.19. The portions of such statute applicable to this controversy are:

"(4) . . . Except as otherwise provided in this subsection nomination papers for an independent candidate to be voted for throughout the state shall be signed by at least 1,000 electors. Each candidate, whether voted for directly or indirectly, shall file with his nomination papers a declaration that he will qualify as such officer, if elected.

"(5) Each elector shall sign *for only one candidate for the same office,* and shall add his residence, post-office address and the date of signing." (Italics supplied.)

Because under the provisions of sec. 9.04, Stats., the voters vote for an entire slate of presidential electors, and have no opportunity to vote separately for individual candidates

for presidential electors, an ambiguity exists with respect to the meaning of sec. 5.19 (5), when applied to such candidates. Where, as here, there exists an ambiguity in a statute, the past practical construction over an extensive period by the officer or administrative agency charged with its administration is to be accorded great weight in determining the statute's meaning. *State ex rel. City Bank & Trust Co. v. Marshall & Ilsley Bank* (1959), 8 Wis. (2d) 301, 307, 99 N. W. (2d) 105; *Frankenthal v. Wisconsin Real Estate Brokers' Board* (1958), 3 Wis. (2d) 249, 255, 88 N. W. (2d) 352, 89 N. W. (2d) 825. Acquiescence of the legislature in the practical interpretation placed upon statutes by the administrative agency charged with their enforcement has also been held by this court to be entitled to great weight in construing ambiguous statutes. *Dunphy Boat Corp. v. Wisconsin Employment Relations Board* (1954), 267 Wis. 316, 326, 64 N. W. (2d) 866, and cases cited therein.

However, the past administrative practice is one of confusion. The attorney general first ruled twice that the names of all presidential electors of a political party, which resorted to the independent method of nominating candidates as prescribed by the predecessor statute to sec. 5.19, Stats., could be placed on one ballot. 1910 Op. Atty. Gen. 309, and 1 Op. Atty. Gen. (1912) 235. Subsequently the attorney general ruled that a separate nomination paper had to be circulated in behalf of each independent presidential elector. 9 Op. Atty. Gen. (1920) 436, 21 Op. Atty. Gen. (1932) 492, and 25 Op. Atty. Gen. (1936) 466. Because of these later rulings of the attorney general the secretary of state required separate nomination papers to be filed for each independent candidate for presidential elector during the period from 1920 to 1952. Then in 1952 the secretary of state permitted the Socialist Workers Party and also the Socialist Labor Party to file sets of nomination papers for presidential elec-

tors on which the names of the entire slate of 12 candidates of each of these parties appeared on the same set of nomination papers. The explanation for this is afforded by the following letter of July 22, 1952:

"Mr. James E. Boulton
Socialist Workers Party
917 North Third Street
Milwaukee 3 Wisconsin

"Dear Sir:

"With reference to our letter of July 18th, we are pleased to give you the results of a conference with Attorney General Vernon Thomson regarding the printing of names of Independent candidates for president and vice president on the Wisconsin ballots.

"The Attorney General informs us that the requirements of the Statutes will be complied with by filing one set of nomination papers in behalf of all presidential electors. Therefore, the given and surname of each elector, vocation and address may be printed on one nomination paper. This eliminates the circulation of twelve different sets of nomination papers for presidential electors. This one set of nomination papers must contain the signatures, residences and post office addresses of at least one thousand electors of the state. If this method is adopted by your organization, we strongly advise the printing of the form of nomination paper in accordance with the sample enclosed. The principles, expressed in five words or less, will apply to all twelve electors.

"A separate set of nomination papers will be required for the Independent candidates for president and vice president. Each set must also contain the signatures of at least one thousand electors of the state.

"Therefore, instead of filing fourteen sets of nomination papers, as has been the practice in other years, it has been determined that three sets, providing they meet the requirements of law, will be sufficient for placing the names of Independent candidates for president and vice president on the presidential ballots of Wisconsin, at the election to be held November 4th, 1952. The deadline for filing will be September 23rd, 1952, at 5:00 o'clock P. M.

"Each candidate for president, vice president and presidential elector will be required to file with the nomination papers a declaration of acceptance that he will qualify for the particular office he is seeking. Forms for this purpose are enclosed.

"Very truly yours,
"/s/ FRED R. ZIMMERMAN,
"Secretary of State"

Also in the ensuing presidential election years of 1956 and 1960 the secretary of state permitted the filing by independent party candidates for presidential elector of nomination papers wherein all 12 candidates of the party were named in each nomination paper. Thus for the last twelve years preceding 1964 the administrative practice has been in accord with the method which petitioners have now attempted to pursue and which the secretary of state contends is invalid.

To us the administrative agency practical construction followed in 1952, 1956, and 1960 is the more logical than that of the years 1920 to 1952. It is also the one which the attorney general had originally approved in 1910 and 1912. We conclude that the 12 independent presidential electors of the Socialist Workers Party constitute one composite candidate within the meaning of sec. 5.19 (5), Stats. This is because under our election statutes there is no possible way for voters to vote separately for the candidacy of one individual person for presidential elector. Therefore, respondent erred in refusing to accept the nomination papers tendered by petitioners.[1]

---

[1] Whether one set of nomination papers may be circulated which names a party's independent candidates for President and Vice-President, and also the slate of 12 presidential electors pledged to such candidates, was not urged by petitioners. We, therefore, have found it unnecessary to consider the validity of such a procedure.

It is our considered opinion that the nomination papers which were presented to respondent for filing on September 22, 1964, wherein the names of all 12 candidates for presidential electors were printed on these papers as nominees, did not contravene the applicable statutes, and that respondent erred in refusing to accept the filing of the same.

While respondent did not on September 22, 1964, advance, as a reason for rejecting the filing, the fact that the name and occupation of one of the candidates named in the nomination papers for presidential elector was a paste-on, he advanced this fact in his return as a justification for not having accepted the tendered finding. He contends that it is impossible to determine when this paste-on was affixed to the nomination papers so there is no way of knowing whether this occurred before or after any particular signer subscribed the papers. The executed affidavits of the circulators, however, aver that the electors signed "the foregoing nomination paper" on the date stated opposite his name. The words "the foregoing nomination paper" purportedly refer to the nomination paper with the paste-on affixed. The affidavit of the circulator creates a rebuttable presumption of regularity. Respondent would have no right to reject the filing of these nomination papers because of the paste-ons in the absence of possession of some fact tending to rebut such presumption of regularity.

Lastly, respondent's return raises the issue that there was no tender made by the individual petitioners on September 22, 1964, of their written declarations of intention to qualify if elected. The persons representing petitioners at the attempted filing on that date had these written declarations in their possession ready to file the same with respondent, but deemed it a useless gesture to tender the same after respondent refused to accept the filing of the nomination pa-

pers. We determine that respondent's rejection of the tendered nomination papers excused petitioners from tendering such written declarations.

It is ordered that a peremptory writ of mandamus issue to respondent, Robert C. Zimmerman, secretary of state, commanding and directing him to do the following acts:

(1) To accept for filing in his office the nomination papers of James E. Boulton, Wayne Leverenz, Albert Stergar, Ted Odell, Myrtle C. Kastner, Betsy Stergar, Florence Kirkland, Earl Plaster, Elaine Goodreau, James Eyman, Duane Witkowski, and Lorraine Fons as candidates for presidential elector of the Socialist Workers Party, which nomination papers he rejected on September 22, 1964.

(2) To certify to all county clerks of the state of Wisconsin pursuant to sec. 6.19 (1), Stats., the names of Clifton DeBerry and Edward Shaw as candidates of the Socialist Workers Party for the offices of President and Vice-President, respectively, of the United States, in order that said county clerks may perform the duties imposed upon them by secs. 6.21 and 6.25, with respect to printing the names of said two candidates for President and Vice-President on both facsimile and regular ballots.