MILWAUKEE FIRE FIGHTERS ASSOCIATION, LOCAL 215, AFL-CIO, Appellant, v. CITY OF MILWAUKEE, Respondent.

*Nos. 26, 27. Argued January 5, 1971.—Decided February 2, 1971.*
(Also reported in 183 N. W. 2d 18.)

For the appellant there was a brief by *H. L. Kastrul* and *Gaines & Saichek,* attorneys, and *Irving D. Gaines* and *David A. Saichek of counsel,* all of Milwaukee, and oral argument by *Mr. Kastrul* and *Mr. David A. Saichek.*

For the respondent there was a brief by *John J. Fleming,* city attorney, *and John F. Cook,* assistant city attorney, and oral argument by *Mr. Cook.*

CONNOR T. HANSEN, J. The principal issue to be decided on this appeal is whether the members of the Milwaukee fire fighting force were granted the proper num-

ber of off-days authorized by the Milwaukee Code of Ordinances.

Sec. 2–150.5 reads as follows:

"Section 2–150.5  **Additional rest days for members of the fire department.** The Chief Engineer shall limit the hours of duty of each member of the firefighting force of the Fire Department as provided for in Section 62.13 (11a) (b) of the Wisconsin Statutes, and in addition shall assign to each member of the firefighting force an additional six (6) off-days per annum of twenty-four (24) consecutive hours each for the purpose of compensating for duty on legal holidays, provided that the Chief Engineer may suspend said days of rest in cases of positive necessity or in case of a sudden or serious emergency when in his opinion assignments of days of rest would impair the efficiency of the department."

The appellant contends that the practice of adding six consecutive days to each man's vacation has deprived the fire fighters of the additional off-days to which they were entitled.

During the years 1962 through May 1, 1965, members of the fire fighting force worked a twenty-four hour day, sixty-three hour workweek. Under the sixty-three hour workweek fire fighters received five regular off-days for every three days worked. After May 1, 1965, the workweek of the fire fighters was reduced to fifty-six hours per week. Under the fifty-six hour workweek, the fire fighters worked a twenty-four hour day and received two regular off-days for every day worked.

Appellant's argument is to the effect that since prior to May 1, 1965, five of every eight days were regular off-days, in any six-day period three-eighths of the days, or two and one-fourth days, were working days and five-eighths of the six days, or three and three-fourth days, were regular off-days. The appellant contends that by adding six days to each fire fighter's vacation, the department took three and three-fourth days which would

have been regular days off and made them additional off-days under the ordinance. The appellant's argument covering the period since May 1, 1965, is to the effect that in any six-day period one-third of the days were work days and two-thirds of the days were regular off-days. Appellant contends that by adding six days to each fire fighter's vacation, the department took four days which would have been regular off-days and made them additional off-days under the ordinance.

Appellant contends that the additional off-days granted by the ordinance can only be days which would have been working days in the fire fighters' normal working cycle.

Respondent contends that the term, "an additional six (6) off-days" should not be construed as an additional six work days off in the fire fighter's normal work schedule. Respondent states that by adding a period of six days to each man's vacation, the fire department has granted each fire fighter six additional off-days as required by the ordinance, and the department's administration of the ordinance has not resulted in allocating additional off-days to regular off-days.

Therefore, the question to be resolved is whether the ordinance is ambiguous, and, if so, was the manner in which the ordinance was applied by the respondent, a reasonable one?

Judicial construction of an ordinance is invoked only when the ordinance is ambiguous and its meaning subject to different interpretations. In *National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 267, 163 N. W. 2d 625, this court stated:

"This court has consistently used the same test for ambiguity:

" 'A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.' *State ex rel. Neelen v. Lucas* (1964), 24 Wis. 2d 262, 267, 128 N. W.

2d 425, citing *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 218, 81 N. W. 2d 533.

Whenever a case such as this one is before the court, however, it is obvious that people disagree as to the meaning to be given to a statute. This alone cannot be controlling. The court should look to the language of the statute itself to determine if 'well-informed persons' *should have* become confused.''

The language of sec. 2–150.5, Milwaukee Code of Ordinances, in the context of the fire fighters' working schedule, is capable of being understood by two reasonably well-informed persons in two different senses. Thus, the ordinance is ambiguous.

The words of the ordinance creating the ambiguity are "an additional six (6) off-days per annum of twenty-four (24) consecutive hours each." When a term used in a statute has no statutory definition, its meaning is dependent upon the subject matter and the connection in which it is used. *State ex rel. Oelke v. Doepke* (1952), 260 Wis. 493, 495, 51 N. W. 2d 10. Ordinances, like statutes, are to be construed according to their intent. *Missionaries of La Salette v. Whitefish Bay* (1954), 267 Wis. 609, 618, 66 N. W. 2d 627.

Both parties agree that the intent of the ordinance is to compensate fire fighters for work on the six major legal holidays, New Year's Day, Memorial Day, the Fourth of July, Labor Day, Thanksgiving, and Christmas. To accomplish this purpose, it is not necessary that the additional six off-days be working days in the fire fighters' normal working cycle. The effect of allocating the additional off-days only to work days in the regular cycle could produce the following result. In the sixty-three hour workweek, since only three of every eight days is a working day, if additional off-days were to be allocated only to regular working days, it would be necessary to add sixteen days to each man's vacation. In the fifty-six hour workweek, since only one of every three days are working

days, it would be necessary to add eighteen days to each man's vacation schedule to provide the proper number of days off. Under this method of administration, the fire fighters would have been granted sixteen or eighteen days off to compensate them for work on holidays. (The total number of days off, if the additional days off are allocated only to regular working days, is the same whether the days are consecutive or interspersed throughout the year.)

The statute, by its express terms, requires six additional off-days of twenty-four consecutive hours. It does not require additional regular days off also be added to each holiday off.

In *State v. King* (1944), 144 Ohio St. 61, 56 N. E. 2d 247, the Supreme Court of Ohio rejected a theory similar to that advanced by the appellant in this case. The law in the *State v. King* case provided that the hours of duty for fire fighters should be twenty-four consecutive hours on duty followed by twenty-four consecutive hours off duty, and that the fire fighters "in addition to receiving a minimum of twenty-four hours off duty in each period of forty-eight hours shall receive an additional period of twenty-four consecutive hours off duty in each period of fourteen days." The appellant took the position that the additional twenty-four hour rest period must be assigned to what would have been the regular twenty-four hours on duty.

". . . The relator contends that since the former statute resulted in seven twenty-four hour working periods and seven twenty-four hour rest periods in two weeks, the amendment now requires six such working periods and eight such rest periods in two weeks and thereby allows three consecutive rest periods once every two weeks. Thus if a fireman were on duty the first, third, fifth, seventh, ninth and eleventh days in a period of two weeks, he would then be entitled to rest during the twelfth, thirteenth and fourteenth days. . . ." *State v. King, supra,* page 63.

The court rejected this approach holding that the statute did not provide for three consecutive rest periods in every two weeks, but rather allowed only an additional twenty-four hours off duty in every two-week period.

". . . The specific requirement of the present provision is that each fireman 'shall receive an additional period of twenty-four consecutive hours off duty in each period of fourteen days.' In other words, the amendment now provides that instead of each working period being followed by only twenty-four hours off duty, there shall be one exception. That exception is that once every two weeks one working period shall be followed by 'an additional period of twenty-four consecutive hours'—a total of forty-eight—off duty before returning to his work. The schedule of working hours arranged by the respondent conforms to this requirement by providing, for example, that in one period of two weeks a fireman who works on the first, third, fifth, seventh, ninth and eleventh days shall be off duty on the twelfth and thirteenth days and shall work on the fourteenth day. Thus, once each two weeks the fireman receives the distinct advantage of an additional or double period off duty, and in no instance is he scheduled to be on duty longer than a single period of twenty-four consecutive hours." *State v. King, supra,* page 63.

The appellant contends that the method of administration practiced by the fire department discriminates between firemen and policemen because a similar ordinance providing additional days off for police patrolmen is administered by granting working days off in the patrolmen's normal working schedule. However, the working schedule of police patrolmen is not similar to that of fire fighters. Municipal employees working a traditional eight-hour day are granted holidays off, or additional days off to compensate for work on legal holidays. That only eight of the twenty-four hours of the holiday would have been working hours does not require that the twenty-four hours of the holiday be divided into three eight-hour periods and allocated to the eight working

hours of three regular working days. Municipal employees, working a traditional eight-hour day, are granted holiday off-days which are in addition to their normal working schedule. As sec. 2–150.5 has been administered, the fire fighters have received additional days off in lieu of holidays, in addition to their normal working schedule. Thus, the fire fighters are put on a par with other employees who receive days off on legal holidays or additional days off in lieu of holidays. This is what the ordinance was designed to accomplish.

The contemporaneous construction given an ordinance by legislators and administrators is an aid to the judicial construction of an ambiguous statute or ordinance. 6 McQuillin, *Mun. Corp.* (3d ed.), p. 103, sec. 20.38.

Sec. 29.22 of the Milwaukee City Charter provides in part, as follows:

". . . The chief engineer of the fire department and the chief of police of said cities, shall be the head of their respective departments and shall have power to regulate said departments and prescribe rules for the government of its members. . . ."

Under this section, the fire chief is responsible for properly administering sec. 2–150.5, Milwaukee Code of Ordinances. On December 2, 1948, the fire chief requested an opinion from the city attorney concerning the administration of the proposed ordinance. The request provided in part:

"Your opinion in the matter of granting the six additional off-days is sought to govern the application of the ordinance, as follows:

"1. Would the intent of the Ordinance be met by granting a six-day consecutive leave to the members, and at the option of the Chief Engineer be added to the regular 14 day vacation period; or,

"2. Does the wording 'six-off-days per annum of twenty-four consecutive hours each' mean that an additional 24 hours off be granted for a regularly scheduled working day, between two off-days; and,

"3. Does the Chief Engineer have the option of the application of the method of granting these additional days off."

In response to the fire chief's request, a then assistant city attorney, issued an opinion which, in answer to the fire chief's questions, stated:

"Answering your first question, you are advised that the intent of the ordinance would be met by granting a six-day consecutive leave to the members which, at the option of the Chief Engineer, could be added to the regular 14-day vacation period.

"In reply to your second inquiry you are advised that the wording 'six off-days per annum of twenty-four consecutive hours each' does not necessarily mean an additional twenty-four hours off for a regularly scheduled working day between two off-days. The intent and purpose of the ordinance is to compensate for the legal holidays such as New Years Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving, and Christmas, the so-called six major holidays.

"In reply to your third inquiry you are advised that the Chief Engineer has the option of the application of the method of granting the additional days off. Since the ordinance is silent as to when the specific days are to be granted, it would be within the discretion of the Chief Engineer of the Department to grant these off days in such a manner as to cause the least interruption of the department services."

Based on this opinion, the fire chief issued Special order No. 221, providing that sec. 2–150.5 would be administered by granting a leave of six consecutive days added to the regular vacation period. The ordinance has been administered in this manner since 1948.

This court has consistently held that practical administrative construction of an ordinance over a long period of time is entitled to great weight. *State ex rel. Boulton v. Zimmerman* (1964), 25 Wis. 2d 457, 462, 130 N. W. 2d 753; *State ex rel. West Allis v. Dieringer* (1957), 275

Wis. 208, 218, 81 N. W. 2d 533. Sec. 2–150.5 was amended eight times since its adoption, without change in the terminology as to the additional days off. This court has also held that legislative acquiescence in the construction of an ordinance by an administrative body is entitled to great weight. *State ex rel. Boulton v. Zimmerman, supra.*

By one of the above mentioned amendments, Ordinance No. 248, enacted in July, 1965, the common council of the city of Milwaukee expressly approved the manner in which sec. 2–150.5 had been administered. That ordinance reads in part:

". . . The Common Council is aware of the construction employed in the administration of this Section as to the six (6) off-days per annum of 24 consecutive hours each for the purpose of compensating for duty on legal holidays and hereby declares that the intent thereof is in all respects identical to such administrations so employed; that it is and has been the intent of the Common Council that the chief engineer shall administer the provisions of this Section by providing six (6) consecutive calendar days off of 24 consecutive hours each, for each member of the firefighting force whose average hours of duty exceed 40 hours per week; . . ."

The appellant contends that this amendment, at most, effected a prospective change, but was not effective to impair rights which existed under the ordinance prior to the amendment. This court has held that it is the duty of the court to construe an act as it existed at the time of its application and that the legislature cannot by later act effect or establish the construction of a former act. *Maus v. Bloss* (1954), 265 Wis. 627, 634, 62 N. W. 2d 708. However, it has also held that while a statute stating the purpose of a former act is not controlling, it is entitled to some weight as an aid to the court in determining what the legislature intended by the original enactment. *Estate of Cameron* (1946), 249 Wis. 531, 542, 25 N. W. 2d 504.

*See also:* 2 Sutherland, *Statutory Construction* (3d ed.), p. 526, sec. 5110; 82 C. J. S., *Statutes,* pp. 787–790, sec. 360.

We conclude that the ordinance is ambiguous and that the manner in which it was applied by the respondent was a reasonable application thereof.

The trial court correctly held that appellant was a proper party-plaintiff, and the respondent does not contest this issue on appeal. Sec. 260.12, Stats.; *Pipkorn v. Brown Deer* (1960), 9 Wis. 2d 571, 577, 101 N. W. 2d 623; *Lozoff v. Kaisershot* (1960), 11 Wis. 2d 485, 488, 489, 105 N. W. 2d 783.

Since we affirm the decision of the trial court as to application of the ordinance, it becomes unnecessary to reach the question of whether the fire fighters could receive monetary compensation in lieu of off-days in the event their position had been sustained, or whether laches, estoppel or the statute of limitations are defenses to this action.

*By the Court.*—Judgments affirmed.

HANLEY, J., took no part.

ROBERT W. HANSEN, J. (*dissenting*). *"Additional"* is the word that derails, as the writer sees it, the logic of the majority opinion here. Section 2–150.5, Milwaukee Code of Ordinances, was entitled: "Additional rest days. . . ." It provided that each Milwaukee fire fighter was to be given ". . . an *additional* six (6) off-days per annum. . . ." (Emphasis supplied.) The word *"additional"* has a clear and precise meaning. Webster's Third New International Dictionary defines *"additional"* as "coming by way of addition: added, further," defining "addition" to mean "anything added: increase, augmentation." Funk and Wagnall's College Standard Dictionary defines *"additional"* as "being in addition; supplementary," defining "addition" to mean "The act of adding

or that which is added; an increase; annex; accession."
Under either definition, *"additional"* means that something is being added to something already in existence.
To give six *additional* days off is to assure that the fire fighters would have to work six less days than they would have had to work if the ordinance had not been enacted.
To include in the computation days that they would not have worked anyhow, is to do something less than giving them six fewer days to work. The writer sees no ambiguity in what *"additional"* must be read to mean. There is no reason to seek secondary sources as to legislative intent where the issue relates to a word that has a clear and exact meaning. Subsequent common council action may show that the aldermen repented of their earlier generosity, but it cannot reach back to change an ordinance that gave fire fighters an *additional* six days off to one that gave much less than that. On the issue of what is a reasonable construction of "an *additional* six (6) off-days," the writer disagrees with the court majority, and on this issue only would reverse and remand for further proceedings in the trial court.