CHAUFFEURS, TEAMSTERS and HELPERS "GENERAL" UNION, LOCAL NO. 200, Respondent, v. WISCONSIN EMPLOYMENT RELATIONS COMMISSION and another, Appellants.*

*No. 39. Argued March 29, 1971.—Decided June 7, 1971.*
(Also reported in 187 N. W. 2d 364.)

* Motion for rehearing denied, with costs, on September 8, 1971.

394

For the appellant Wisconsin Employment Relations Commission the cause was argued by *William H. Wilker,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the appellant Gerovac Wrecking Co., Inc., there was a brief by *Davis, Kuelthau, Vergeront & Stover,* attorneys, and *John G. Vergeront* of counsel, all of Milwaukee, and oral argument by *John G. Vergeront.*

For the respondent there was a brief by *Goldberg, Previant & Uelmen,* attorneys, and *Gerry M. Miller* of counsel, all of Milwaukee, and oral argument by *Mr. Miller.*

WILKIE, J. It is of primary importance to recognize that the issue presented to this court concerns the jurisdiction of the WERC to hear out the unfair labor charge made by Local 200 against Gerovac. In no way is any issue presented as to the merits of that charge involving an alleged violation of the prevailing wage requirements of sec. 103.50, Stats. The sole question is whether Local 200 is a "party in interest" within the meaning of sec. 111.07 (2) (a) involved in a "controversy as to employment relations" within the meaning of sec. 111.06 (1) (L).

The trial court apparently had no quarrel with the WERC's findings of fact, noting that Local 200 had not claimed representative status, that it had not attempted to secure representative status and had no members in Gerovac's employ. It also apparently agreed that the picketing of Gerovac was a "publicity picket."

The court reviewed the purpose of the Employment Peace Act as declared in sec. 111.01, Stats., the definition of "employe" in sec. 111.02(3), and the right of employees to "engage in lawful, concerted activities for the

purpose of . . . mutual aid or protection . . ." as set forth in sec. 111.04. The court then concluded:

"From the reading of these three statutes, together, it appears that employees, not necessarily of the employer in question, have the right to engage in lawful, concerted activities for the purpose of mutual aid to maintain an adequate income for themselves. Further, it is the public policy of this state to provide employees with a convenient, expeditious, and impartial tribunal in which to pursue their quest for adequate income. *The bringing of a suit before that impartial tribunal by the representative of employees is a lawful, concerted activity.*" (Emphasis supplied.)

The court then went on to note sec. 103.50 (1) and (2), Stats., which require the paying of a prevailing wage to employees on highway projects, and that the failure to comply carries with it criminal sanctions (secs. 103.50 (7), 103.39 (4)), and also noted that this court's decision in *Green v. Jones*,[1] held that sec. 103.50 also provided civil remedies for effectuating the intent of the statute, *i.e.*, "to stimulate and protect the economic position of individual workers whose jobs are in execution of a highway improvement."[2] Although the trial court referred to *Green v. Jones,* it concluded that the WERC was the proper body to enforce these civil remedies.[3]

Addressing itself to the real issue as we view it, *i.e.*, whether Local 200 is a proper party to bring the action, the court noted that Local 200 "could file a [criminal] complaint against the contractor for noncompliance under section 103.50 (8), Wisconsin Statutes . . ."

---

[1] (1964), 23 Wis. 2d 551, 128 N. W. 2d 1.

[2] *Id.* at page 558.

[3] However, *Green v. Jones* states at page 560, as the trial court noted:

". . . Sec. 103.50, Stats., does not create a quasi-judicial body to conduct hearings in relation to violations of certified wage rates. Statutes providing an administrative forum for enforcement of workers' rights expressly create such a body."

(the WERC had so stated), but went on to hold that Local 200 was also entitled to bring an unfair labor practice charge as well, reasoning:

"It is important that the prevailing wage scale be upheld and enforced. Certainly a union representing employees who are beneficiaries of such a prevailing wage scale have an interest in seeing that wage scale is strictly enforced.

"If the only alternatives open to a union in this case were noncoercive picketing and filing criminal complaints, the public policy of the state would be frustrated. The legislature in enacting section 103.50, Wisconsin Statutes gave all employees who are or may be working in highway construction the guarantee of the prevailing wage rate in the area. Nonpayment of the prevailing wage scale was made a crime and section 111.06 (1) (L), Wisconsin Statutes, makes it an unfair labor practice for an employer:

" 'To commit any crime or misdemeanor in connection with any controversy as to employment relations.'

"Certainly, if Gerovac is not paying the prevailing wage rate, there is an unfair labor practice being committed.

"This court finds that in the case at bar, the alleged unfair labor practice would be committed not only against the employees of Gerovac, but rather against all employees in the area who might be affected by the prevailing wage scales. Further, this court feels that it was the intention of the legislature to provide the Wisconsin Employment Relations Commission as a forum for the airing of such complaints by employees so affected."

We find basic weaknesses in the trial court's analysis of the problem. The first is its conclusion that the instant action is necessary to effectuate the purpose of the prevailing wage law. The purpose of this law is "to stimulate and protect the economic position of individual workers whose jobs are in execution of a highway improvement." [4] It is clear that the legislature sought to enforce the prevailing wage law through

---

[4] *Green v. Jones, supra,* footnote 1, at page 558.

criminal sanctions applicable both to the offending employer [5] and to employees who acquiesce in their employer's illegal action.[6] The statute specifies that it is the highway commission who has the duty to "require adherence to subs. (1) and (6)." [7] The statute also specifies that:

".  .  . Upon request of the highway commission or upon complaint of alleged violation, the district attorney of the county in which the work is located shall make such investigation as necessary and prosecute violations in a court of competent jurisdiction." [8]

Thus, it was obviously the intent of the legislature to enforce the law by means of criminal prosecutions or threat thereof, initiated by the highway commission, or presumably by a citizen or group of citizens. There is no evidence of such action here by the highway commission, or by any other citizen or group of citizens.

This court has further recognized [9] that sec. 103.50, Stats., also "created a private right with a civil remedy . . . ." In *Green v. Jones* our court held sec. 103.50 created no administrative forum for the enforcement of that right, and that, therefore, the right could be enforced in court. Our court specifically declared that the statute created a private right but "sec. 103.50, Stats., created no administrative forum for determination of private rights." [10]

In the instant case, Local 200 is seeking to have such an administrative forum, the WERC, enforce sec. 103.50, Stats., by the circular route of an unfair labor practice charge. The circuit court approved this action by assuming that the remedies provided in the statute (sec.

---

[5] Sec. 103.50 (7) (a), Stats.

[6] Sec. 103.50 (7) (c), Stats.

[7] Sec. 103.50 (8), Stats.

[8] *Id.*

[9] *Green v. Jones, supra,* footnote 1, at page 561.

[10] *Id.*

103.50) were not adequate to effectuate the purpose of the law, and that the administrative forum (for enforcement) must be the Wisconsin Employment Relations Commission.

In short, this court has said sec. 103.50, Stats., creates a private right enforceable in court because no administrative forum for enforcement was expressly created. It is clear from a reading of the statute that the private right is that of the employees of the noncomplying employer. *They* may enforce it in court, or their union, as their representative, may presumably enforce it for them.[11] However, Local 200 here could probably not enforce this right in court for the employees of Gerovac for an obvious reason: no standing. Local 200 does not represent these employees. Hence Local 200 uses the method here employed to accomplish nearly the same result.

The circuit court would permit this because, in its view, the remedies provided for effectuating the purposes of the prevailing wage law are not adequate. We quarrel with this view. The legislature obviously intended to enforce the prevailing wage law through the use of criminal sanctions and by civil court actions taken by the employees of the noncomplying employer. We cannot assume that these means of enforcement are inadequate. No showing has been made here that they have been tried and found inadequate.

Local 200 has one more remedy: to seek representational status among Gerovac's employees. This is one of the primary purposes of the Employment Peace Act— collective bargaining in which both sides have rights and responsibilities. This has not been done here.

There is a second weakness in the trial court's analysis: its analysis leading it to conclude that WERC juris-

[11] *Milwaukee Fire Fighters Asso. v. Milwaukee* (1971), 50 Wis. 2d 9, 20, 183 N. W. 2d 18.

diction of this complaint of Local 200 effectuates the purposes of the Employment Peace Act.

The trial court noted that the policy of the Employment Peace Act is to "protect and promote each of these interests [public, employee, and employer] with due regard to the situation and to the rights of the others." [12] Also "to provide a convenient, expeditious and impartial tribunal by which these interests may have their respective rights and obligations adjudicated." [13] The WERC is that "tribunal" designed to enforce the rights *enumerated in the Peace Act.* (The legislature, however, set up different procedures to enforce the public and private rights created by sec. 103.50, Stats.)

The WERC did not here decide that the prevailing wage law could not be enforced by means of an unfair labor practice charge brought by a proper party. It merely held that Local 200 was *not* a proper party.

In support of the WERC position, we have the existence of their *continuing* policy in this regard: a party in interest is one who is a party to a "controversy as to employment relations," and such a controversy requires "the normal concomitants of disputes between labor organizations and managements, *i.e.,* representative status or a claim thereof . . . ." The WERC has not gone so far as to require the existence of a "labor dispute" which in turn requires majority status of the union. A "claim of representation" is enough. [14]

Here the "controversy as to employment relations" alleged by Local 200 to exist is their demand that Gerovac pay the prevailing wage as required by law, Gerovac's apparent refusal to do so, and Local 200's picketing. The WERC has said this is not enough, requiring, in effect, that Local 200 at least purport to represent the employees of Gerovac.

[12] Sec. 111.01 (1), Stats.
[13] Sec. 111.01 (4), Stats.
[14] *Milwaukee Cheese Co.,* WERC Dec. No. 5792, August, 1961.

The circuit court circumvented this problem by stating that the unfair labor practice in this case was being committed against all in general industry because of their interest and the *potential* adverse effect on them. However, the unfair labor practice alleged in this case is a misdemeanor: failure to comply with the prevailing wage law. Consequently, the entire public has an interest in seeing it enforced, and a potential economic interest as well. Taking the definition of employee from the Peace Act to mean any employee, as did the trial court, means that any member of the public who is an employee may bring an unfair labor practice charge against a noncomplying employer once his demand for compliance is refused. Had the legislature intended such a result, it is hard to believe they would not have so stated in the Peace Act (as well as in the prevailing wage law) rather than specifying that charges could be brought by a "party in interest."

Obviously Local 200 has an interest in Gerovac's employment practices in this case. But is it of such a nature that it must bring an unfair labor practice charge before the WERC in order to protect it? And is it unreasonable for the WERC to hold that Local 200 *may not* do so?

The WERC holds that it interprets sec. 111.07 (2) (a), Stats., a jurisdictional statute, as limiting "parties in interest" to those engaged in "controversy as to employment relations," defining such controversies as those involving an employer and his employees or their representational labor organization. Further, the WERC, under some circumstances, extends "party in interest" status to a labor union that is seeking representation. However, it will not extend such status to Local 200, who neither represents nor purports to represent Gerovac's employees. Despite Local 200's admitted interest in area standards, there are good reasons to uphold the WERC's position.

First, considerable weight should be accorded the WERC's interpretation of this statute. The legislature entrusted the interpretation and enforcement of the Peace Act in the first instance to the WERC. It has considerable expertise in the field,[15] with the perspective that comes from continued dealing with labor controversies of all kinds. The rationale of this court's recent decision in *State v. Chippewa Cable Co.*[16] has meaning here:

"Our principal reason for relying on the agency's interpretation of a statute is found in the comparative qualifications of the court and the agency. The court is reluctant to substitute its own judgment for the agency's where the statute in question requires application of the agency's expertise. Although the agency's interpretation of a jurisdictional statute, as here, is entitled to less weight than its interpretation of other statutes, we must observe here that the commission . . . is made up of experts in the field of aviation safety who we may assume are knowledgeable about the problems (both existing and prospective) in the field. The commission has concluded that exercise of the maximum jurisdiction possible under the statute is necessary to permit it to adequately protect navigable airspace and it is reasonable to conclude, therefore, that the legislature must have intended to grant such jurisdiction." [17]

Here, the WERC has concluded that the exercise of maximum jurisdiction possible under the statute is not necessary to effectuate the purposes of the Peace Act (not the prevailing wage law), but that some limits should be placed on the extending of "party in interest" status.

Second, this construction given the statute by the WERC is not unreasonable. It does not frustrate the purposes of the *Peace Act,* with which it is concerned.

[15] *Muskego-Norway Consolidated Schools Joint School Dist. No. 9 v. Wisconsin Employment Relations Board* (1967), 35 Wis. 2d 540, 562, 151 N. W. 2d 617.

[16] (1970), 48 Wis. 2d 341, 180 N. W. 2d 714.

[17] *Id.* at page 354.

Even if Local 200's interpretation of the statute, as accepted by the trial court, should be considered reasonable, in the event of differing interpretations of the statute, both reasonable, the agency's construction is accepted by this court.[18]

Local 200 is primarily concerned with effectuating the purpose of the prevailing wage law. And, as has already been discussed, the legislature chose to make the highway commission primarily responsible for the latter's enforcement, not the WERC. It also made the various district attorneys responsible through their usual law enforcement function. The method of enforcement chosen was that of criminal sanctions, with proceedings initiated by the highway commission or, presumably, the public generally.

In addition, the employees of the noncomplying employer may seek recovery of wages due them under the act in court, pursuant to *Green v. Jones, supra.* An interested union may engage in noncoercive picketing to publicize the employer's illegal pay practices. That union may always seek to organize the employees.

It has not been shown that these remedies are inadequate thereby making resort to the instant approach a necessity. Even so, this is a function for the legislature to perform.

Third, to allow any interested union to follow the route here proposed by Local 200 raises the question of limitations discussed earlier. How strong must the interest be? Isn't all of labor somehow affected?[19] Admittedly, the "interest" might be limited to the particular industry, but how does one distinguish between the various trades in this day of specialized skills with their complex interdependent functions in a particular

[18] *Id.* See also: *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. 2d 502, 510, 126 N. W. 2d 6.

[19] Note that the Milwaukee Building & Construction Trades Council submitted an amicus curiae brief to the circuit court.

industry? And a large union such as that of the Teamsters (of which Local 200 is a part) covers many industries, from supermarkets to highway construction. They then would be "interested" in the wages paid to retail clerks and street workers. It is clear that there is some value and reason for the WERC, with its expertise, to limit their jurisdiction as it has.

We conclude that the construction which the WERC has placed on its jurisdictional statute should be upheld.

The legislature has detailed the means for enforcing the prevailing wage law: criminal sanctions activated primarily by the highway commission. These means have been supplemented by the additional remedy made available by *Green v. Jones*: [20] civil suit by an affected employee. The legislature has not provided for any WERC jurisdiction in this area and the construction made by the WERC imposing limits on its own jurisdiction is entirely reasonable.

*By the Court.*—Order reversed.

ROBERT W. HANSEN, J. (*dissenting*). "The real issue as we view it," states the majority opinion, is "whether Local 200 is a proper party to bring the action." The writer agrees the sole issue here is whether the Union had standing to bring a complaint. The unfair labor practice complaint brought by Local 200 against the defendant wrecking company to the Wisconsin Employment Relations Commission alleged that the wrecking company was not paying the prevailing wages required to be paid by state law (sec. 103.50, Stats.). While Local 200 represents a majority of the truck drivers in the area and industry affected, because it neither represents nor is seeking to represent the employees of the wrecking company, the majority opinion finds Local 200 not to be a "party in interest" entitled under the

---

[20] *Supra,* footnote 1.

statute to bring such complaint to said commission. The majority concludes that Local 200 had no standing.

To inquire whether Local 200 is a proper "party in interest" is to ask whether or not the bringing of this complaint under these circumstances is within the legitimate "zone of interests to be protected or regulated" [1] by the two statutes involved: the prevailing wage standards law (sec. 103.50, Stats.) and the Wisconsin Employment Peace Act (ch. 111). The reference here to "zone of interests" is not original. It comes from a recent United States Supreme Court decision [2] that dealt with whether the petitioners there had standing to challenge a ruling by the national comptroller of the currency. In that case the nation's high court stated that ". . . The question of standing . . . concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . ." [3] Whether Local 200 has the standing required to be a "party in interest" under the Employment Peace Act requires an analysis of what is the legitimate "zone of interests" of a trade union particularly in seeking enforcement of the prevailing wage standards law. This phrasing of the issue requires attention to three alternative concepts of the trade union's "zone of interests" and the determining of whether the state legislature has chosen between them in enacting the prevailing wage and employment peace acts.

There is a concept that the "zone of interests" of a labor organization is limited to that of representing the employees of a particular employer in dealings with

---

[1] *Data Processing Service v. Camp* (1970), 397 U. S. 150, 153, 90 Sup. Ct. 827, 25 L. Ed. 2d 184.

[2] *Id.*

[3] *Id.* at page 153.

such employer. Under this approach the union that does not represent or even seek to represent the employees of a particular employer simply has no standing to bring a complaint against such employer. This narrowest defining of the legitimate "zone of interests" of a trade union, followed by the commission and now approved by the majority opinion, would give Local 200 standing to bring a complaint against the wrecking company if, but only if, it came to represent or sought to represent some of the employees of such wrecking company.

Broader is the craft union concept of determining the "zone of interests" sought to be protected by statutes such as the prevailing wage statute and employment peace acts. This craft union concept sees a trade union as legitimately concerned with the interests of the members of a craft or skilled trade, not limited to representing only those of its members as may be working at a particular time for a particular employer. Under this approach laws such as the prevailing wage and employment peace acts were sought and enacted not, as the majority holds, to create only a "private right" of the "employees of the noncomplying employer." Rather such laws are viewed as intended and designed to protect the prevailing wages and working conditions of all those engaged in a similar craft or trade in a particular locality. Under this approach the noncomplying employer who does not pay statute-required wage levels does more than shortchange the handful of workers of the unfair competitive advantage, and directly and adversely affects all complying employers in the area, as well as invading a legitimate "zone of interests" of craft unions representing the members of the craft in the locality. Under this approach Local 200 had an interest in seeking compliance with the prevailing wage law on the part of the wrecking company even though none of the workers were members

of the union, because it was protecting legitimate interests of all its truck driver members in the locality.

Broader still is the industrial union concept of labor organization. Industrial unions not only seek to enroll as union members all workers in a particular industry, but assert a right of concern on the part of workers in an industry, or their union, as to noncompliance with laws such as the prevailing wage standards act by any employer in the industry. The "zone of interests" is not limited to members of a particular skill or trade, but seen as affecting all in the industry in the area—be they steel workers, auto workers or brewery workers. Prevailing wage laws, under this concept, are viewed as designed, intended and operating to maintain wages and working conditions for all in a particular industry, not just for those working for a particular employer. Under the industrial union concept, Local 200 would be acting within its legitimate "zone of interests" for noncompliance with the prevailing wage standards act would be seen as having industry-wide consequences.

It is not a part of the judicial function for courts or individual judges to indicate a preference as between the three alternative concepts of trade union operations: the plant-limited independent association, the craft union or the industrial union. The question, rather, is whether the Wisconsin legislature, in enacting the prevailing wage standards law and, more particularly, the Employment Peace Act, did any such picking or choosing. If it did, the courts are bound to follow the limit as to "zone of interests" legislatively determined, be it broad or narrow. Public policy, not constitutional dimension, is involved. But, if it did not, there is neither sound reason nor basis for the courts to select as controlling the narrowest and most restrictive of definitions of legitimate labor union interest or right to complain.

In determining what the legislature intended to do and in fact did in this regard, the writer would not give

the weight, accorded in the majority opinion, to what is there termed ". . . the existence of their *continuing* policy in this regard: . . ." a reference to the WERC position that a "party in interest" entitled to bring a complaint to it, must be "one who is a party to a 'controversy as to employment relations,' . . ." and that such controversy "requires 'the normal concomitants of disputes between labor organizations and managements, *i.e.*, representative status or a claim thereof . . .' " There is no gainsaying that in the case before us the WERC would require, to quote the majority opinion, ". . . in effect, that Local 200 at least purport to represent the employees of Gerovac." Without such purporting the majority agrees the Local 200 is without standing. But the issue is, or should be, what is in the statute, not what has the WERC adopted as its "continuing policy."

Has the Wisconsin legislature prescribed or authorized a requirement that a trades or labor organization must represent or seek to represent the employees of a particular employer before it is a "party in interest" under the statute and before its dispute with a particular employer as to compliance with the prevailing wage standards law can become a "controversy as to employment relations." If that is not in the law, the WERC has no more right than this court to put it there. Has the legislature made it a test for the standing of a union to bring a complaint as to violations of the prevailing wage standards law that such union have or seek to have members in the work force of the employer complained against? When the legislature used the phrase, "controversy as to employment relations," did they limit such controversy to a dispute between an individual employer and his employees, or their designated representative? The writer thinks not, particularly in view of sec. 111.02 (3), Stats., stating that the term, "employee," as used in the subchapter:

". . . shall not be limited to the employes of a particular employer unless the context clearly indicates otherwise; . . ."

Did the legislature intend or provide that an employee organization, representing the larger number of area workmen in a particular craft or industry, had no standing to bring a complaint to the WERC of an employer's noncompliance with the prevailing wage law unless or until it represented or sought to represent one or more of the workmen being underpaid? The writer thinks not, in light of the sweeping declaration of policy in sec. 111.01, Stats., wherein the legislature states:

"(1) . . . there are three major interests involved, namely: That of the public, the employe, and the employer. . . . It is the policy of the state to protect and promote each of these interests with due regard to the situation and to the rights of the others."

"(2) . . . regular and adequate income for the employe . . . are promotive of all of these interests. . . ."

"(4) It is the policy of the state . . . to provide a convenient, expeditious and impartial tribunal by which these interests may have their respective rights and obligations adjudicated. . . ."

Additionally, in sec. 111.04, Stats., employees are given the right to ". . . engage in lawful, concerted activities for the purpose of . . . mutual aid or protection; . . ." The writer concurs with the trial court's reading of the governing statutes as giving employees in this state the right to engage in lawful, concerted activities for the purpose of mutual aid or protection, and agrees that it is reasonable that such lawful, concerted activity include the bringing of a complaint to the WERC charging failure to comply with prevailing wage laws by a particular employer or contractor. To assure the maintenance of labor standards by protecting the wage rate required by law to be paid in a craft, industry or locality

is, as the writer sees, within the express language and declared purpose of ch. 111.

By its unreasonably narrow construction of the phrase, "party in interest," the majority opinion does violence to the overriding purposes of the Employment Peace Act. This court has said that this act (ch. 111, Stats.) ". . . should be liberally construed to secure the objectives stated in the declaration of policy set forth in sec. 111.01. . . ." [4] Sec. 111.01 (2), Stats., in turn declares that "[i]ndustrial peace, regular and adequate income for the employe, and uninterrupted production . . . are largely dependent upon the maintenance of fair, . . . employment relations and the availability of suitable machinery for the peaceful adjustment of *whatever controversies may arise. . . .*" (Emphasis supplied.) The construction given "party in interest" by the majority certainly is not one that makes suitable machinery available "for the peaceful adjustment of whatever controversies may arise."

In seeking to avoid a less narrow construction of what the legislature did and intended to do, the majority opinion notes that ". . . a large union such as that of the Teamsters (of which Local 200 is a part) covers many industries, from supermarkets to highway construction. They then would be 'interested' in the wages paid to retail clerks and street workers. . . ." Where the sole purpose sought or served is that of procuring compliance with a valid state law, what is disturbing about holding a union legitimately interested in the enforcement of social legislation affecting any of its members? The public policy involved is for the legislature to determine. Where the sole purpose served or end sought is to secure compliance with the law, the maximizing of options to secure compliance with the law is not against the public interest unless the legis-

---

[4] *Dunphy Boat Corp. v. Wisconsin Employment Relations Board* (1954), 267 Wis. 316, 323, 324, 64 N. W. 2d 866.

lature declares it so to be. More frightening is the majority's narrowed construction of the phrase, "party in interest," so as to weaken one law—the prevailing wage standards act—and make unavailable in most situations another—the Employment Peace Act. Neither logic nor sound rules of statutory construction support the route traveled and the result reached by the court majority. The writer would affirm.

I am authorized to state that Mr. Justice BRUCE F. BEILFUSS and Mr. Justice NATHAN S. HEFFERNAN join in this dissent.