STATE EX REL. OELKE and others, Appellants, vs. DOEPKE, County Clerk, and others, Respondents.*

*December 6, 1951—January 8, 1952.*

* Motion for rehearing denied, without costs, on April 8, 1952.

For the appellants there was a brief by *Philip Lehner, Sr.,* of Princeton, attorney, and *Adolph P. Lehner* of Oconto Falls of counsel, and oral argument by *Philip Lehner, Sr.*

For the respondents there was a brief by *Emery Paul* of Markesan, *J. L. McMonigal* of Berlin, and *Bogue & Sanderson* of Portage, and oral argument by *Mr. David Bogue* and *Mr. Paul.*

GEHL, J.   Relators contend that the trial court's conclusion that the petition for referendum was filed within the time required by statute is erroneous, and that the referendum ballot was defective in that it submitted to the voters all of the orders dissolving, detaching, attaching, and organizing the various school districts in a single question.

Sec. 40.303 (14), Stats., provides as follows:

". . . a referendum election may be held to approve any order of a county school committee creating, altering, consolidating, or dissolving school districts entered after August 26, 1947, and prior to July 1, 1949, provided a petition for such referendum election . . . is filed with the county school committee within thirty days after such reorganized district has been operating one school year under the state-aid system provided by the 1949 legislature. . . ."

It is relators' claim that the term "one school year" means the school term, the period during which teaching operations are conducted, and that, therefore, the statute began to run in this case on June 2, 1950. Defendants counter and the trial court agreed that it means the year beginning July 1st and ending June 30th. The term has no statutory definition. Its meaning is therefore dependent upon the subject matter and the connection in which it is used. "The phrase 'school year' has a recognized meaning not only in educational circles but quite generally." *Francis v. Shawnee Mission Rural High School,* 161 Kan. 634, 170 Pac. (2d) 807. When

speaking of a school year it is quite generally understood that the period of operation is meant.

The term "after such reorganized district has been *operating*" is significant. The word "operating" is synonymous with "conducting." In the sense in which either term is ordinarily used it does not refer to the district's management of its fiscal or similar affairs; these matters are the constant concern of its officers and, except for statutory provisions requiring the closing of books and the rendering of reports, etc., are not dealt with periodically. The school itself is operated or conducted during only parts of the year. The quoted provision must be read as though the words "its school" follow.

That this was the meaning intended by the legislature to be applied to the term is indicated by the provision that the referendum may be held only after the reorganized district has been operating one year, that is, after the electors have had the opportunity from one year's operation of the school to observe the effect of the reorganization. That appears to be the purpose of delaying a referendum; otherwise there would seem to be no good reason for not permitting a referendum immediately upon completing the reorganization.

Although, as we have said, there is no statute defining the term, there are other provisions dealing with the operation of schools which throw some light upon what the legislature meant by its use. For instance, sec. 40.04 (11), Stats., entitled "School year, nine months minimum" confers power upon the annual meeting, or on failure of the meeting to act, upon the board to determine the length of time school shall be taught; sec. 40.371 (1) (c) provides that school must be held at least one hundred eighty days to qualify the district for state aid; sec. 40.41 (5) authorizes high school district meetings to determine the length of time the school shall be taught, not less than nine months; sec. 40.53 (1) gives city school boards the same right to determine the length of

the school term as is given to common school districts; sec. 42.20 defines "school year" in the Teachers Retirement Act as a period of one hundred twenty teaching days. These provisions suggest that the legislature, when it provided what should or might be done during a school year or during a limited time thereafter, intended that it should or might be done during the period of school operation or within the time fixed for action after the close of the operation. We conclude that the term "school year" means the period during which school is taught, and that therefore the petition for a referendum was filed too late.

Relators also contend that the ballot provided for the referendum was defective. Having determined that because the petition was not filed in due time there was no authority for the referendum, we do not find it necessary to consider this contention.

Defendants contend that the act of the county clerk in setting up the machinery for a referendum cannot be inquired into by certiorari. They do not suggest that the electors are without remedy to review the unauthorized act nor do they indicate that any remedy other than certiorari is available to them. There is no statute authorizing an appeal from his act and, therefore, the right does not exist. *In re Brand,* 251 Wis. 531, 30 N. W. 238. The purpose of the writ is to bring up for review questions of jurisdiction, the precise question presented here,—whether the clerk acted within his jurisdiction in calling a referendum.

The writ was directed to the secretary of the county school committee among others. Since the records required to be returned for consideration of the petition for the writ were in his custody, sec. 40.30 (6), Stats., the writ was properly directed to him, sec. 252.04. That the petition was for a writ also directed to other officials does not affect the court's jurisdiction to act thereon. *State ex rel. Hebert v. Carlson,* 150 Wis. 584, 137 N. W. 746.

Defendants attack the sufficiency of the petition for writ upon the ground that it does not show a right to relief in the relators. They are electors of the districts affected and as such clearly have an interest in the manner in which their schools are to be operated and the expenditures to be made in their maintenance. They may be heard to test the validity of an act which affects them as these proposed dissolutions and the reorganization do. *State ex rel. Welch v. Chatterton,* 239 Wis. 523, 300 N. W. 922.

In view of the fact that relators had no other means of testing the validity of the referendum we consider that the trial court abused its discretion in quashing the writ. Defendants cite *State ex rel. Hallauer v. Gosnell,* 116 Wis. 606, 93 N. W. 542, and *State ex rel. Skogstad v. Anderson,* 130 Wis. 227, 109 N. W. 981, as authority for their contention that the trial court did not abuse its discretion in denying the writ. It should be observed that in both cases it was pointed out that petitioners had other adequate remedies at law and that the injuries which might be inflicted upon them were trifling. As we have pointed out, such is not the case here.

Other matters are discussed in defendants' brief. We do not consider it necessary to discuss them because they deal principally with relators' attack upon the form of the ballot and we have found it unnecessary to deal with that subject.

*By the Court.*—Judgment reversed.