SLABOSHESKE and another, Plaintiffs and Respondents, vs. CHIKOWSKE and others, Defendants and Respondents: JOINT SCHOOL DISTRICT 2 OF THE CITY OF PRINCETON and others, Appellants.

*April 30—June 5, 1956.*

For the appellants there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner*.

For the respondents Slabosheske there was a brief by *McMonigal & Wildermuth* of Berlin, and oral argument by *J. L. McMonigal*.

For the respondents Chikowske and others there was a brief by *Bogue & Sanderson* of Portage, and oral argument by *Thomas J. Sanderson*.

BROWN, J.   By orders effective May 25, 1949, the school committees of Marquette and Green Lake counties dissolved a number of rural school districts and consolidated their territory with the city of Princeton's school district under the name of Joint School District No. 2.  It will be called herein simply District 2.  One of the districts so dissolved was known as District No. 7 and that and the enlarged District 2 are the ones involved in this controversy.  On June 13, 1949, following the dissolution, the treasurer of District 7 paid over to the treasurer of District 2 District 7's bank balance of $2,222.38.  District 2 operated the consolidated district pursuant to the school committees' order during the school year 1949–1950.

Sec. 40.303 (14) (a), Stats. 1949, provides:

"Except as provided in paragraph (b), a referendum election may be held to approve any order of a county school committee creating, altering, consolidating, or dissolving school districts entered after August 26, 1947, and prior to July 1, 1949, provided a petition for such referendum election, signed by either 25 per cent of the electors or 1,000 of the electors residing within all of the territory outside the city or village limits of any city or village involved in the proposed reorganized district, . . . is filed with the county school committee within thirty days after such reorganized district has been operating one school year under the state-aid system provided by the 1949 legislature. . . ."

Sec. 40.303 (14) (a), Stats. 1949, further provides that the order of dissolution and consolidation "shall not become effective" unless it is approved by a majority vote of the electors of the territory affected by it. The conflict in the demand of the statute that a newly created district shall operate for a school year before being tested by referendum and the provision that the order creating it shall not be effective if disapproved was recognized and dealt with in *In re Joint Union Free High School Dist.* (1952), 262 Wis. 126, 54 N. W. (2d) 40, in which it was held that the unfavorable result of the referendum did not render the committees' order void from the beginning but only void after the date of the referendum.

Relying on sec. 40.303 (14), Stats. 1949, electors of the reorganized District 2 on July 20, 1950, filed a petition for a referendum. The referendum was held September 19, 1950, and resulted in a disapproval of the order creating the Princeton city district and attaching the rural districts to it. Proceedings were then brought in the circuit court for Green Lake county by certiorari to test the validity of the referendum. The judgment, dated July 25, 1951, quashed the writ, thus holding the referendum valid and the result of it effective to invalidate the committees' order dissolving District 7 and creating the consolidated District 2. An appeal taken from that judgment resulted in a decision rendered January 8, 1952, *State ex rel. Oelke v. Doepke* (1952), 260 Wis. 493, 51 N. W. (2d) 10. This held that the petition for referendum had been filed too late and reversed the judgment of the circuit court. The effect was to determine that the referendum was void and the order dissolving the rural districts and creating District 2 remained valid.

Pending determination of the appeal, however, District 7 relied on the referendum and the circuit court's judgment concerning it and the district determined to operate in the same manner as it had done before the school committees'

order of dissolution. A school district meeting was held August 6, 1951, at which a school board was elected, given authority to borrow money to defray school operating expenses and incidental charges and a school tax levy was authorized. The meeting was informed and ignored the fact that an appeal was then pending from the judgment of the circuit court upon which the valid revival of District 7 depended. On September 26, 1951, pursuant to the supposed authority conferred on them at the meeting of August 6th, the officers of District 7 borrowed $2,000 from the plaintiffs, upon the promissory note of District 7, which bore interest at four per cent until maturity and thereafter "at the highest rate of interest allowed by law" until paid and further provided for judgment against the maker for principal, interest, and "costs including attorney's fees of 15 per cent of the amount then unpaid thereon." The note was signed for the District by Mrs. Clara Chikowske, its clerk, Aloizie Soda, its treasurer, and Tom Chikowske, its director. The note matured and was extended several times by renewals executed by the same persons in the name of District 7. Such renewals were executed after January 8, 1952, when the appeal was determined, and also after June 19, 1952, when in response to the mandate of the supreme court in *State ex rel. Oelke v. Doepke, supra,* the trial court amended its judgment and finally adjudicated the dissolution of District 7. No issue is raised concerning the validity of these renewals as differing from the validity of the initial note; accordingly we give no consideration to any possible difference, but treat the issue as though no note but the first one is in question. After plaintiffs had thus lent the money the school board proceeded to spend it in paying operating costs of District 7, including some attorney's fees. The trial court was concerned with the rights of. the plaintiffs and not with the legitimacy of all the expenditures and our interest is likewise limited. During the school years 1949–1950 and 1950–1951 the children of

District 7 were transported to Princeton and educated there, but following the meeting of August 6, 1951, already referred to, the newly elected officers of District 7 engaged a teacher and conducted a school for that district until January 8, 1952, when the decision of the supreme court was published in *State ex rel. Oelke v. Doepke, supra*. District 7 then terminated operations and its pupils resumed attendance in the consolidated District 2 in Princeton.

Thereafter there was default in payment of the latest renewal note and on May 12, 1954, the plaintiffs brought the present action upon it against District 2 and, in the alternative, against the signers of the note as individuals. The trial court concluded that the note was originally a valid obligation of District 7 and had become a valid obligation of District 2 as successor to the assets and liabilities of District 7. There was also a conclusion of law that the plaintiffs were entitled to recover in *quantum meruit* because District 7 had had the benefit of the borrowed money. The judgment, entered November 12, 1955, on the basis of *quantum meruit*, adjudged District 2 liable to the plaintiffs for $2,403.62, which included principal with interest at four per cent and taxable costs and disbursements of $121.40, but made no allowance of attorney's fees as provided by the note. A balance of $302.84 stands in a bank to the credit of District 7 and the judgment ordered the bank to pay this to the treasurer of District 2. The judgment also dismissed the complaint against the makers of the note as individuals.

In its essentials, the argument of the appellants is that a void referendum confirmed by an erroneous judgment of a trial court could not establish or re-establish a school district (District 7), legally competent to make contracts nor could such referendum and judgment make incompetent or illegal a school district which was legally created by order of the county school committees (District 2), nor could there be simultaneously two legal districts. It is submitted that the

school board of District 2 remained throughout the time in question the only body qualified and competent to exercise the functions of a school board for the area of which the former District 7 had been a part and all acts of persons claiming to be officers of District 7 were null and void. There is a measure of logic and of truth in the proposition so stated but the conclusion drawn from it overlooks the well-known and fundamental legal principle that when a court has jurisdiction of the parties and the subject matter its judgment, however erroneous, is a complete justification, until reversed or set aside, of acts done in its enforcement and a protection to those who acted in good faith in reliance upon it.

"GENERALLY.—Subject to the obligation of the party successful at the trial to make restitution of money or property received under or by virtue of the enforcement of a judgment which is afterward reversed, a judgment rendered by a court of competent jurisdiction of both the parties and the subject matter protects the parties acting under it before reversal. It constitutes a sufficient justification for all acts done in its enforcement until reversed or set aside by competent authority." 3 Am. Jur., Appeal and Error, p. 755, sec. 1266.

*"Voidable judgments.* As discussed supra, sec. 191, where the court has jurisdiction of the parties, of the subject matter or cause of action, and of the question determined or relief granted, that is, where the court has jurisdiction to render the particular judgment, mere errors or irregularities in the exercise of the jurisdiction, although sufficient to render the judgment erroneous, and subject to be reversed or set aside in a proper proceeding for that purpose, do not render the judgment void, and until so set aside it is valid and binding for all purposes. Until set aside in a proper proceeding for that purpose, a voidable judgment has the same force and effect as though no error had been committed; it will support proceedings taken under it, and, as discussed supra, secs. 428–433, it is not subject to collateral attack." 49 C. J. S., Judgments, p. 880, sec. 449.

". . . assuming that the consolidation was improper and the judgment rendered was erroneous, yet it is the act of the

court, and until reversed, unless superseded, constitutes a sufficient justification for all acts done in its enforcement." *Griggs v. Brandon* (1928), 132 Okla. 180, 181, 269 Pac. 1052.

"No order which a court is empowered, under any circumstances in the course of a proceeding over which it has jurisdiction, to make, can be treated as a nullity merely because it was made improvidently, or in a manner not warranted by law, or the previous state of the case. The only question in such a case is, had the court or tribunal, the power, under *any circumstances,* to make the order or perform the act? If this be answered in the affirmative, then its decision upon *those circumstances* becomes final and conclusive, until reversed by a direct proceeding for that purpose." *Tallman v. McCarty* (1860), 11 Wis. *401, *406.

"There is no question that the court had jurisdiction of the cause of action and of the parties. If, then, it had power to make the order of commitment in any supposable circumstances which might arise in the progress of the cause, then the order is valid until reversed, however erroneous it may be in the particular circumstance." *In re Rosenberg* (1895), 90 Wis. 581, 584, 63 N. W. 1065, 64 N. W. 299.

A case sufficiently like the one before us to illustrate the principle is *Byrnes v. Boulevard Commissioners* (1939), 121 N. J. L. 497, 3 Atl. (2d) 456. There the legislature abolished a certain commission and created another, having in part the same functions. The new commissioners obtained a judgment ousting their predecessors, after which they discharged certain employees, the plaintiffs. After that the judgment of ouster was reversed on the ground that the legislation creating the new commission was defective. The discharged employees then brought the present action to recover their salaries for the time they were idle, on the theory that the new commissioners had no legal existence and all their acts were void. The appellate court held that the reversal did not make the acts of the new commissioners illegal or void. Acts so done in the time between the judgment of

the trial court and its reversal by the appellate court were valid, the discharges were effective and the employees have no cause of action. As in the case at bar, there could not be two legal bodies at the same time; one of them was based on error, yet its acts were held valid.

Again, in *Fridley v. Farmers & Mechanics Savings Bank* (1917), 136 Minn. 333, 162 N. W. 454, it appears that Mrs. Price died and Mr. Price petitioned for appointment as the administrator of her estate. Letters of administration were issued to him and he demanded and obtained Mrs. Price's bank deposits. Before long it turned out that Price had not only murdered his wife but that they had never been married. Accordingly, under the law in force, he was ineligible to be administrator of her estate. The probate court revoked the Letters and appointed a new administrator who then demanded that the banks pay him the money which Mrs. Price had on deposit at the time of her death. The supreme court of Minnesota held that the probate court had jurisdiction over Mrs. Price's estate and its appointment of an administrator was voidable but not void and all parties who dealt with Price in reliance upon his position as administrator were protected against having to account later to others. Although the Letters were issued to a person not entitled to them and were later revoked they were effective to the extent necessary to protect those who in good faith acted in reliance upon them.

So, now, until we reversed the trial court in *State ex rel. Oelke v. Doepke, supra,* the judgment confirming the referendum, for the protection of those acting in reliance upon it, must be considered effective until reversed. Thereupon, by virtue of sec. 40.303 (14) (a), Stats. 1949, the effectiveness of the order of consolidation was canceled and the area of District 7 reverted to its former status. *In re Joint Union Free High School Dist., supra.* That is, it became an independent school district which, while the trial court's judgment was still unreversed, took measures permitted to school

boards and authorized by the electors of the district. Those who dealt with the district in reliance upon its apparent status, such as the plaintiffs, are protected by the circuit court judgment.

It does not appear in appellants' brief but it was urged on oral argument, and the contention was considered by the trial court, that all proceedings were stayed by the pending appeal of *State ex rel. Oelke v. Doepke, supra,* and the borrowing of money by District 7 was a violation of the stay and created no legal obligation. We consider that the appeal did not have that effect.

In the absence of positive provisions of the statute to the contrary, an appeal perfected as the law requires, does *proprio vigore* stay proceedings under the order appealed from. *Hudson v. Smith* (1859), 9 Wis. *122. In the absence of specific statutory direction to the contrary, an appeal operates as a supersedeas. *David Adler & Sons Co. v. Maglio* (1929), 198 Wis. 24, 223 N. W. 89. Applicable to many sets of facts there are statutory directions to the contrary, whereby the appeal does not stay proceedings under the order or judgment unless security is given by the appellant. Secs. 274.17 to 274.33, inclusive, Stats. 1949, direct that the execution of judgments in various matters shall not be stayed unless the appellant gives bond. In matters not within those statutes the pre-existing law, that the appeal itself operated as a stay, continues in force. We find no statutory provision requiring security as a consideration of staying the execution of such a judgment as the one granted by the trial court in *State ex rel. Oelke v. Doepke, supra,* which does not direct the doing or not doing of any particular act or thing, or which otherwise does not come under the provisions of secs. 274.17 to 274.33. It appears, then, that the appeal of *State ex rel. Oelke v. Doepke, supra,* by itself, operated, as appellants contend, to stay the execution of the judgment of the trial court, or as a supersedeas, although no stay was asked or security given. (The terms "stay" and "supersedeas" are

used interchangeably in the texts and decisions.) But while appellants are correct in their contention their prospects are not brightened, for such a stay or supersedeas merely "stays the proceedings of the body or tribunal which made the determination sought to be reviewed." *Hedberg v. Dettling* (1929), 198 Wis. 342, 344, 224 N. W. 108. More recently, Mr. Chief Justice ROSENBERRY, speaking for the court in *Carpenter Baking Co. v. Bakery S. D. Local Union* (1941), 237 Wis. 24, 30, 296 N. W. 118, defined the scope of such a stay by quoting from *Sixth Avenue R. R. Co. v. Gilbert E. R. R. Co.* (1877), 71 N. Y. 430, as follows:

" 'By the appeal [from the judgment], with a stay of proceedings on the part of the plaintiff in execution of the judgment, the judgment was not annulled, or its obligations upon the defendant impaired, but its "execution" was stayed—that is, the plaintiff was prohibited from issuing process in execution of it.' "

Thus it may be conceded that the appeal from the judgment of *State ex rel. Oelke v. Doepke, supra,* without any bond or other security, was effective to stay the proceedings of the trial court, as the tribunal whose determination was in process of review, but the appeal had no such effect upon any other body such as District 7 which had been revived by the judgment but had not, by it, been commanded to do or refrain from doing anything and which neither asked nor required any proceedings by the trial court in aid of its operations. "Supersedeas may not be used as a remedy against persons acting independently of a court and without the aid of its process." 83 C. J. S., Supersedeas, p. 893, sec. 3.

"2, 3 This is not like a case where an execution or order of the court is necessary to enable the party to reap the fruits of his decree. It acts *proprio vigore* upon the res—the right to use the water. *Day v. Holland,* 15 Or. 464, (15 Pac. 855). The appeal and the undertaking given did not stay the operation of the decree. It only stayed the issuance of an

execution for costs and disbursements." *Porter v. Small* (1912), 62 Or. 574, 588, 120 Pac. 393, 397.

We conclude, then, that the appeal did not nullify the judgment nor prevent the revived District 7 from operating its school nor from borrowing money with which to do so, in reliance on that unreversed judgment, as long as the district did not require the aid of process of the trial court in aid of its operations. Its transaction with the plaintiffs created a valid liability which might be enforced against it.

Appellants' brief is devoted entirely to the contention that no enforceable obligation came into existence, except possibly against the individuals who signed the promissory note in the name of District 7; but since it was mentioned in oral argument that even if District 7 might have been liable on the note, District 2 was not, we will discuss that proposition briefly.

On January 8, 1952, the supreme court reversed the trial court in *State ex rel. Oelke v. Doepke, supra.* On June 19, 1952, the circuit court amended its former judgment in compliance with our mandate and thereby finally and formally dissolved District 7 and terminated its existence. No action was brought upon District 7's note until May 12, 1954, and then was brought against District 2 as the successor to all the assets and liabilities of the defunct District 7. The consolidation of District 7 in the new and enlarged District 2 brought into District 2 all the valid obligations of District 7. In *Nyre v. Joint School Dist.* (1951), 258 Wis. 248, 45 N. W. (2d) 614, District 5 had hired a teacher for the coming year. Before the year began this district was consolidated with others to form Joint School District No. 1. No. 1 had no place for the teacher and declined to honor the contract between her and No. 5. She sued No. 1 upon the contract and we allowed recovery, saying (p. 252):

"The school districts had a right to consolidate and to operate only one school in the interests of economy. The dis-

tricts entering into the consolidation, however, cannot thereby escape obligations legally incurred prior to the consolidation."

So here, the valid debt incurred by District 7 in the period when it was legally operating as an independent unit is carried with it when it rejoins District 2 upon the determination of the appeal in *State ex rel. Oelke v. Doepke, supra,* and becomes enforceable against District 2.

The trial court's written decision said that it was determining the action upon principles of *quantum meruit* and, therefore, was not allowing to the plaintiffs the attorney's fees specified in the note upon which they had brought their action. They have petitioned to review that part of the judgment to the end that they may also recover 15 per cent attorney's fees.

The trial court stated in its opinion that District 7 was a *de jure* body during the interval between the judgment of the trial court in *State ex rel. Oelke v. Doepke, supra,* and its reversal by the supreme court. We agree with that and with the trial court's conclusions that the negotiation of the loan evidenced by the note was a valid transaction. This being so, we cannot agree that judgment could be based on *quantum meruit* rather than on the express contract embodied in the terms of the note. We would have no doubt in determining that plaintiffs are entitled to the 15 per cent attorney's fees stipulated in the note except that their complaint demands principal, interest at four per cent, and "reasonable attorney's fees." We find no amendment of this pleading. The court has no right to grant greater relief than is demanded. *Beranek v. Beranek* (1902), 113 Wis. 272, 279, 89 N. W. 146. The question of what attorney's fee is reasonable is one for the trial court which, under these proceedings, should have determined that and have included it in the judgment, being limited, however, by the terms of the note to a maximum of 15 per cent.

Other questions are raised by appellants but we do not consider them sufficiently material to warrant extension of this opinion.

We are aware that if the referendum and judgment reactivated District 7 until the judgment was reversed, it also reactivated the other districts which made up the consolidated District 2. We recognize that if, in the period before reversal, District 2 continued to operate and to incur obligations in disregard of the reactivation of its constituent parts, a challenge to those obligations would raise questions which the present opinion does not attempt to answer. The facts of the instant case do not present such problems and we refrain from attempting to solve them before they are presented.

In summary we conclude that the referendum, confirmed by the judgment of the circuit court, made the consolidation order ineffective and reactivated the former District 7 until the judgment was reversed; that a pending appeal, without more, did not prohibit the exercise of the functions of District 7 which were not dependent on process of the court from which the appeal was taken; that the unreversed judgment justified the acts done in reliance on it and protected the plaintiffs who dealt with District 7 relying on the apparent authority confirmed in its officers by the judgment.

*By the Court.*—Judgment modified by adding to the amount found due plaintiffs a reasonable attorney's fee not exceeding 15 per cent of the amount unpaid on the promissory note referred to in the opinion and, as so modified, judgment is affirmed. Cause remanded with directions to the trial court to determine and include in the judgment such reasonable attorney's fee.