In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3271

DANIEL VIRNICH,

*Plaintiff-Appellant,*

*v.*

JEFFREY VORWALD, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:09-cv-00340—**Barbara B. Crabb**, *Judge.*

ARGUED SEPTEMBER 7, 2011—DECIDED DECEMBER 20, 2011

Before POSNER, FLAUM, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Daniel Virnich sued
defendants Jeffrey Vorwald, American Trust and Savings
Bank, Michael Polsky, and Beck Chaet Bamburger &
Polsky, S.C., in this diversity action alleging violations
of Wisconsin Statute section 134.01. That statute
prohibits conspiracies between two or more people to
willfully or maliciously injure the reputation, trade,
business or profession of another. The district court

dismissed Virnich's suit for failure to state a claim under Rule 12(b)(6) pursuant to the Supreme Court's interpretation and application of that rule and Rule 8 in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 120 S. Ct. 1937, 1949-50 (2009). See *Virnich v. Vorwald*, 2010 WL 3489770, at *7 (W.D. Wis. Sept. 1, 2010). Virnich appeals. We find that, although Virnich has met the necessary pleading threshold, subsequent developments in state court show that his claim is barred by issue preclusion. Accordingly, we affirm the district court's judgment.[1]

We review the district court's dismissal of Virnich's complaint de novo. The following description of the events underlying Virnich's claim is drawn from the allegations in his complaint, which we construe in the light most favorable to him, as the non-moving party. See *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*, 657 F.3d 496, 502 (7th Cir. 2011). In addition, we take judicial notice of the relevant state court proceedings. See Fed. R. Evid. 201(b); *520 South Michigan Ave. Associates, Ltd. v. Shannon*, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008).

Before he was a plaintiff in federal court, Virnich was a defendant in Wisconsin state court. Before that, he was

---

[1] Because we dismiss on grounds of issue preclusion, we do not address the defendants' alternative arguments: waiver, quasi-judicial immunity of Polsky as the receiver, and dismissal of Beck Chaet for failure to plead sufficient facts under Rule 8.

a director and an indirect owner of Communications Products Corporation, or CPC.[2] According to Virnich's second amended complaint, from 1986 until 2002, CPC was a successful enterprise, employing as many as 250 people and having total audited net profits in excess of $12 million. Virnich acted and was compensated as a director of CPC.

Defendant American Trust solicited CPC's banking business, and in 1999 CPC entered into several loan agreements with the bank. Although CPC agreed to a covenant in those agreements that required it to retain at least $900,000 of net worth, Virnich and co-owner Jack Moores refused to provide personal guarantees of American Trust's loans to CPC. At the inception of the relationship, American Trust was fully aware of CPC's finances and ownership structure. CPC continued to inform American Trust of its financial situation directly and through audited and unaudited financial statements.

CPC experienced financial difficulties in 2001 and 2002 but remained current in its obligations to American Trust through May 2003. Defendant Vorwald became the primary American Trust loan officer on the CPC account in 2002. In January 2003, American Trust again requested

---

[2] Virnich was the sole owner of Virdanco, Inc., a holding company. Virdanco owned 50% of CePro, Inc. CePro owned 100% of Basic Products, Inc., and Basic Products owned 100% of CPC. The upshot is that Virnich indirectly owned 50% of CPC. Jack Moores, who is not a party to this action, owned the other 50%.

personal guarantees on CPC's obligations from Virnich and Moores. Virnich and Moores again refused. On April 24, 2003, American Trust held a meeting at CPC's facility with Virnich, Moores, and other members of CPC management. Vorwald demanded additional collateral or repayment of some of CPC's obligations, and once more asked for personal guarantees from Virnich and Moores. Virnich and Moores indicated that they were willing to infuse money into the company, but they continued to refuse to give personal guarantees. Vorwald became "visibly upset" but did not express any concerns about CPC's solvency at the April 24, 2003 meeting.

Virnich alleges that it was around the time of the April 24 meeting that Vorwald consulted with legal counsel to determine the requirements for appointment of a receiver:

> Motivated by personal animosity toward Virnich, Vorwald developed a plan to attack Virnich and Moores' reputations and otherwise cause harm to them. The basic elements of the plan were to remove Virnich and Moores from their positions with CPC by seeking the improper ex parte appointment of a receiver based on Vorwald's knowingly false and misleading affidavit, with the intent to misrepresent CPC's financial condition and damage Virnich and Moores' reputations. Upon information and belief, Mr. Vorwald furthered this malicious plan by repre-senting, in April and May of 2003, to [defendant] Polsky and his immediate superior at American Trust, [non-party] Thomas Utzig, that Virnich and Moores

were essentially "bad guys" that were "looting" CPC. Upon information and belief, Vorwald enlisted Polsky and Utzig's cooperation to go after Virnich and Moores by initiating and continuing the receivership action and taking other malicious actions to harm Virnich and Moores.

Second Amended Complaint ¶ 22. Vorwald also contacted one of CPC's other lenders, informing that lender that American Trust intended to file a receivership action. As a result, that lender cut off negotiations with CPC over release of proceeds from a property sale. Vorwald then contacted the FBI in a fruitless attempt to instigate an investigation of Virnich for bank fraud and tax evasion.

In May 2003, Vorwald contacted defendant Polsky and told him that American Trust was considering seeking an involuntary receivership action against CPC and asking if Polsky could serve as receiver. Polsky did not do an independent investigation of what he was told, but "knowingly and intentionally joined Vorwald's plan with malicious intent to harm Virnich and Moores' reputations." *Id.*, ¶ 28. Polsky had never met Virnich or Moores, but the information he had received from Vorwald caused him to develop a malicious attitude toward them. Polsky then allegedly helped Vorwald in preparing a "false and misleading" affidavit and an inaccurate schedule of assets for the court in support of American Trust's motion for a receivership.

On June 3, 2003, American Trust brought its ex parte motion to appoint a receiver for CPC in Grant County

Wisconsin, Case No. 03-CV-285. American Trust's motion was granted, and Polsky was appointed receiver. Virnich contends that Vorwald and Polsky moved forward even though both had reason to believe that CPC was not insolvent or in imminent danger of becoming insolvent because "the primary purpose for the receivership action was to remove Virnich and Moores from the company and damage their reputations." *Id.*, ¶ 38.

On June 4, 2003, Polsky, now receiver, visited CPC's plant. Virnich alleges that Polsky announced to CPC's employees that the plant might be closing, worrying CPC's employees, customers, and suppliers. Days later, Polsky spoke to two CPC employees and described Virnich and Moores as "characters" who had created the most convoluted corporate structure he had ever seen. He also said that Virnich and Moores were "bad guys" who had done "bad things." He spoke in a tone "which suggested anger and disdain for Virnich and Moores." *Id.*, ¶ 48. Polsky also met with union representatives, telling them that they needed to support him as receiver or the plant would be closed. In a court hearing, Polsky testified that the "insider transactions" involving Virnich and Moores and their holding entities were unusual and not commercially reasonable, and stated that Virnich and Moores did not really care about CPC and were interested only in protecting themselves.

Virnich and Moores contested the appointment of the receiver, but Vorwald threatened that if they continued in those efforts, American Trust would cut off CPC's funding and CPC would immediately shut down, which

would diminish the value of CPC's assets. On September 9, 2003, Basic Products (CPC's owner, a Virnich and Moores holding company) entered into an agreement to sell CPC's assets and entered releases with Polsky and American Trust. Then, years later, Basic Products filed a motion in the receivership action for leave to file a derivative action on behalf of CPC against American Trust. In the meantime, Polsky, as receiver, had filed a separate but related lawsuit against Virnich and Moores individually for breach of fiduciary duty and related claims (Case No. 04-CV-285). The receivership court stayed Basic Products' motion for leave to file a derivative action pending resolution of Polsky's lawsuit.

In the fiduciary action, Polsky sought millions of dollars in damages, including punitive damages, against Virnich and Moores. Virnich alleges here that Polsky filed that suit both to force Virnich and Moores to incur substantial legal fees and to subject their reputations to further damage. The suit was covered in the press, and Polsky's counsel made several public statements about the case to the effect that Virnich and Moores had "looted" CPC, had put their interests ahead of the company's, and deserved to be punished. *Id.*, ¶¶ 56-57. On January 17, 2007, a jury found for CPC and against Virnich and Moores, awarding $6.5 million. Polsky attempted to collect the judgment from Virnich and Moores and arranged to have pleadings in the collection action served on Virnich while he was appearing at a charity golf event. In addition, Polsky attempted to force a sheriff's sale of Virnich's residence and to freeze Virnich's and Moores' retirement accounts. However, the

jury's verdict was later overturned by the Wisconsin Court of Appeals on procedural grounds, *Polsky v. Virnich*, 779 N.W.2d 712 (Wis. App. 2010), and the Wisconsin Supreme Court affirmed by an equally divided court. *Polsky v. Virnich*, 800 N.W.2d 742 (Wis. 2011). With the resolution of the appeal of Polsky's suit against Virnich and Moores, the receivership court lifted the stay on Basic Products' motion for leave to file a derivative action, and briefing commenced on the question of how to proceed in the ongoing receivership action.

In the interim, however, Virnich and co-plaintiffs Virdanco, Basic Products, and CePro, had filed this action in federal court against defendants Vorwald, American Trust, Polsky, and Beck Chaet, alleging tortious interference with contract, negligence, and violation of Wisconsin Statute section 134.01, which prohibits conspiracy to willfully or maliciously injure the reputation, trade, business or profession of another. The district court dismissed all claims in the plaintiffs' original complaint on the basis that they were derivative and should have been brought by CPC. Then, on reconsideration, the district court held that Virnich's section 134.01 claim was not derivative to the extent that Virnich alleged an individual injury to his reputation. However, the court found that the complaint failed to state a claim under the standard set by *Twombly*, 550 U.S. at 555, and *Iqbal*, 129 S. Ct. at 1949-50. Virnich filed a second complaint, which the court also dismissed on Rule 12(b)(6) grounds. Virnich filed this appeal.

While Virnich's appeal was pending before this court, the state receivership court denied Basic Products' motion to

file a derivative lawsuit against American Trust on behalf of CPC. Specifically, in an order dated February 21, 2011, the receivership court found that, "CPC, Virnich and Moores, have waived their right to seek damages against American Trust for the alleged filing of inaccurate documentation to support the appointment of the Receiver in this case, and against the Receiver for actions taken prior to the September 2003 Agreement."

I. *Rule 12(b)(6) Dismissal*

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Under the pleading standard now articulated by the Supreme Court, the complaint must contain allegations that "state a claim to relief that is plausible on its face" or it is subject to dismissal under Rule 12(b)(6). *Iqbal*, 129 S. Ct. at 1940, quoting *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555. That is, the complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id*. at 557. A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor. However, legal

conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption. *Iqbal*, 129 S. Ct. at 1951.

In relevant part, section 134.01 states: "Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever . . . shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500." The statute is a criminal statute, but Wisconsin courts have found an implied private right of action for victims of such conspiracies. *Radue v. Dill*, 246 N.W.2d 507, 511 (Wis. 1976). Wisconsin defines a civil conspiracy as "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Id*. at 509. Thus, to prevail at trial on a section 134.01 claim, a plaintiff must prove that (1) the defendants acted together; (2) with a common purpose to injure the plaintiff's reputation or business; (3) with malice; and (4) the plaintiff suffered financial harm. See Wis. Jury Instructions Civil 2820.

The district court found that Virnich failed to plead a plausible conspiracy under section 134.01. In the district court's view, "Polsky, a professional receiver, was contacted by a creditor about a possible position as a receiver for a company that was having financial troubles and was delinquent on a loan. . . . Polsky accepted the position because it is his profession and he was being

compensated." *Virnich*, 2010 WL 3489770, at *11. In support of the district court's interpretation of Virnich's allegations, the defendants argue that Virnich's claim makes no sense, and is based on "vague aspersions, conclusory statements, and supposed 'wrongful' conduct." The defendants ask in their brief:

> Why would Polsky, who had never worked with American Trust or Vorwald before, have decided to endanger his career as a court-appointed professional by entering into a conspiracy with this third party? Why would this "conspiracy" take the form of commencing a receivership against a company Virnich owned in part, which seems an odd and indirect way to strike a blow at someone you supposedly wish to harm to the exclusion of legitimate business interests?

These are fine questions for summary judgment, but to accept such doubts as dispositive on a Rule 12(b)(6) motion to dismiss would in effect amend Wisconsin law to prohibit section 134.01 conspiracy claims in any situation in which receiverships or other professional contracts are involved. Wisconsin law has not gone that far. As noted above, to allege the requisite conspiracy for a viable section 134.01 claim under Wisconsin law, a plaintiff must allege an agreement between two or more people, and acts taken in furtherance of that agreement. Virnich has pled both of these ingredients. Virnich alleged facts sufficient to show that Vorwald sought the receivership on behalf of American Trust, that Polsky agreed to participate in that endeavor, and that Vorwald

and Polsky compiled the allegedly false affidavit for the receivership court and, once the receivership was established, acted in concert to pursue the ends of the receivership. Vorwald and Polsky allegedly agreed, and then acted in cooperation — in short, they "conspired." Is Virnich's claim probable? Perhaps not. But it has met the plausibility standard of *Twombly* and *Iqbal*.

The district court also found that Virnich had failed to plead the malice needed for a viable section 134.01 action. Malice for purposes of a section 134.01 claim means "doing a harm malevolently for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired [such as hurting someone else's business by competition]." *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 469 N.W.2d 629, 635 (Wis. 1991), quoting *Aikens v. Wisconsin*, 195 U.S. 194, 203 (1904). In short, an *irrational* desire to cause harm for the sake of harm is actionable under section 134.01. A *rational* desire to cause harm for the sake of competitive advantage is not. Also, both parties to the conspiracy must have acted out of malice for a plaintiff's section 134.01 claim to survive. See *Maleki*, 469 N.W.2d at 634. So, for Virnich's claim to withstand a motion to dismiss, he must plead facts from which it could plausibly be inferred that both Vorwald and Polsky irrationally wanted to harm him for harm's sake.

Here, the district court found that Virnich failed to plead sufficient facts to suggest that Polsky acted with the requisite intent to cause him harm. Believing that "it would be difficult, if not impossible, to show that a

person develops malice toward a person he has never met and knows nothing about," the district court considered but dismissed as inadequate Virnich's allegations that Polsky, in reliance on Vorwald's assertion that Virnich was "a bad guy," became malicious and assisted Vorwald in preparing a purposely "false and misleading" receivership affidavit. *Virnich*, 2010 WL 3489770, at *9. In other words, the district court did not find that the malice alleged by Virnich was rational.

But under Wisconsin law, that is exactly the point. The malice that must be pled to satisfy section 134.01, by definition, must not be based on the defendant's intent to gain a competitive advantage. To be actionable, the defendant's motive is not supposed to make sense. The plaintiff must allege and then prove an irrational desire to harm for harm's sake. Virnich's allegations that Polsky set out to harm him without having met him fit that bill, at least at the pleading stage. Moreover, we believe the district court's finding that it would have been "difficult if not impossible" for Polsky to want to harm Virnich for the sake of harming him without having met him is based on a mistaken premise. People hate and irrationally want to harm people they have never met all the time. Far from being "difficult" or "impossible," such insensible vitriol is fairly common. (For example, relatively few people in the United States have personally met Bernie Madoff, but we feel safe in surmising that many in the country would admit to feeling some malice towards him.) It is all too common for people to feel divided from others based on real or imagined political, social, or financial lines (to name just

a few). Whether or not any two individuals have ever met in person, those divides are often coupled with irrational loathing towards any person perceived to be on the other side of the line. Although the inference might not be *probable*, it is at least plausible to infer from Virnich's allegations that, even though Polsky had never met Virnich, he developed the irrational malice needed to survive a motion to dismiss.

In short, Virnich alleged that Polsky heard Vorwald's description of Virnich as a "bad guy" and signed on to the receivership plan. He assisted in drafting a "false and misleading" affidavit, presented a doctored CPC balance sheet to the receivership court, and got himself appointed as receiver. Once installed as the receiver, it is alleged, he met with certain CPC employees and told them that Virnich was a "character" who had created the most convoluted financial structure he had ever seen, accused Virnich of insider trading in the receivership action, arranged to have pleadings served on Virnich at a charity golf event and attempted to force a sheriff's sale of Virnich's residence and to freeze his retirement accounts. Even after *Twombly* and *Iqbal*, the pleading standard has been met here.

II.  *Issue Preclusion*

Although properly pled, Virnich's claim fails for a different reason. The receivership was established by an order of the Grant County court, and once established, the receivership was supervised by that court. All of the actions that Virnich complains of in his section 134.01

conspiracy claim were taken either in pursuit of or under the auspices of the court-supervised receivership. In essence, Virnich is attempting to relitigate whether or not the imposition and ends of the receivership were proper, conceding as much in oral argument. (Question: "If Polsky and Vorwald did not concoct a phony receivership, you have no case." Answer: "That's correct, your honor.") But under applicable Wisconsin law, issue preclusion, also called collateral estoppel, bars the relitigation of a factual or legal issue that actually was litigated and decided in an earlier action. See *Northern States Power Co. v. Bugher*, 525 N.W.2d 723, 727 (Wis. 1995). Accordingly, Virnich's section 134.01 conspiracy claim is precluded, and fails.[3]

Virnich's complaint plainly sets forth that, "subsequent to the ex parte appointment, Virnich and Moores sought to contest the appointment of the receiver." Second Amended Complaint ¶ 54. The receivership court had not ruled on that objection before Virnich and Moores withdrew it. On September 10, 2003, the court approved the sale of CPC. Nearly two years had passed after the sale was approved when Basic Products (*i.e.*, Virnich and Moores) filed a motion for leave to commence a derivative action against American Trust "for alleged falsehoods in the documents filed in support of the

---

[3] We apply state law when our jurisdiction rests on diversity of citizenship, and the adjudication argued to have preclusive effect (under either issue or claim preclusion) was issued by a state tribunal. See *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 916 (7th Cir. 2005).

initial appointment of the Receiver." 2/21/2011 Order in Case No. 03-CV-285. In opposition, American Trust argued that Virnich and Moores, having participated in and received benefits from the receivership action, had delayed too long to object to the receivership action, and that any objections they had to the receivership were waived.

In its February 21, 2011 order, the receivership court considered that eight years had passed since the receivership was instituted, that Virnich and Moores had delayed two years after the sale of CPC to move for leave to file their derivative action, and that in the meantime, a jury had concluded that Virnich and Moores had had inappropriate financial dealings with CPC to the $6.5 million detriment of CPC and its creditors. The receivership court concluded:

> Under these circumstances, CPC, Virnich and Moores' failure to pursue their objection to the appointment of the Receiver and their subsequent agreement to allow for the sale of CPC's assets in exchange for a determination that the disputed leased equipment was not [American Trust's] collateral, constitutes waiver. This waiver encompasses both the right to file a derivative action against the bank and to maintain any claim against the Receiver for pre-agreement activities.
>
> . . . .
>
> The court finds that CPC, Virnich and Moores, have waived their right to seek damages against [American Trust] for the alleged filing of inaccurate documenta-

tion to support the appointment of the Receiver in this case, and against the Receiver for actions taken prior to the September 2003 Agreement.

For Virnich's section 134.01 conspiracy claim to be viable, the receivership action would have to be relitigated. More specifically, we would have to order the district court to reopen the receivership court's finding of waiver. Thus, issue preclusion bars Virnich's section 134.01 conspiracy claim.

To avoid this result, Virnich argues that he was not personally a party to the receivership or the agreement upon which the order is based. That argument goes nowhere. For purposes of issue preclusion, he stands in privity with CPC, see *Manu-Tronics, Inc. v. Effective Management Systems, Inc.*, 471 N.W.2d 263, 267 (Wis. App. 1991) (privity requirement is met where the two actions involve a closely held corporation and a principal shareholder, where the shareholder actively participated), and CPC was a party to the receivership and the agreement. Virnich also argues that the February 21, 2011 order has no preclusive effect because it is being appealed, but that is also immaterial. See Wis. Pleading and Practice § 37:103 (5th ed. May 2011) ("It is the Wisconsin rule that an appeal from a judgment does not preclude that judgment from being a bar to another action."); see also *Slabosheske v. Chikowske*, 77 N.W.2d 497 (Wis. 1956) (judgment was effective pending appeal, and parties to bond transaction could properly rely on judgment before it was reversed); *Knuth v. Lepp*, 193 N.W. 519, 522 (Wis. 1923) (pending appeal did not affect presumption

that judgment was still in force with respect to issues decided in the judgment).[4]

We also reject Virnich's contention that some of his section 134.01 conspiracy allegations survive the February 21, 2011 order because that order addressed only "Polsky's conduct surrounding his improper appointment as receiver," whereas his conspiracy claim also addresses acts that occurred after the receivership was established. Any acts by Polsky or Vorwald taken after the receivership was established, and in furtherance of the goals of the receivership, were taken pursuant to the receivership and under the supervision of the receivership court. Those acts are subject to the principles of issue preclusion along with the receivership court's finding of waiver. Virnich cannot parse his allegations to escape this result. The receivership court has found that Virnich's arguments that the actions taken by Vorwald and Polsky in pursuit of and in furtherance of the receivership were improper are waived, either explicitly in the February 21, 2011 order or implicitly by

---

[4] This rule is consistent with federal law and the state law of Illinois and Indiana. See *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580, 595 (7th Cir. 1977) (federal and Illinois law), *vacated on other grounds*, 435 U.S. 992 (1978); *Starzenski v. City of Elkhart*, 87 F.3d 872, 878 (7th Cir. 1996) (Indiana law); see also *Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1215 n. 1 (6th Cir. 1989) ("the established rule in the federal courts is that a final judgment retains all of its preclusive effect pending appeal"); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988) (same for issue preclusion).

the receivership court's establishment and ongoing supervision of the receivership. Virnich cannot bring his nearly identical allegations in the guise of a section 134.01 conspiracy action without running headlong into the principle of issue preclusion.

Under Wisconsin law, we must also consider several factors to determine whether application of the doctrine of issue preclusion would comport with "fundamental fairness" before closing the book on Virnich's section 134.01 claim. See *Aldrich v. Labor and Industry Review Comm'n*, 801 N.W.2d 457, 465-66 (Wis. App. 2011), citing *Lindas v. Cady*, 515 N.W.2d 458, 463 (Wis. 1994). The Wisconsin courts have identified five factors to be considered in this analysis:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained judicial review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Aldrich*, 801 N.W.2d at 465, quoting *Lindas*, 515 N.W.2d at 464. We see nothing "fundamentally unfair" about applying issue preclusion to bar Virnich's claims. To address the listed factors: (1) the parties inform us that the receivership court's order is being appealed; (2) the questions of law in the receivership action and in the section 134.01 conspiracy action are factually indistinct, each turning on whether imposition of the receivership was proper; (3) nothing suggests that there were significant differences in the quality or extent of the proceedings in state or federal court; (4) the defendants did not have a lower burden of persuasion in seeking imposition of the receivership or in seeking waiver; and (5) Virnich had plenty of incentive to obtain full and fair adjudication of his allegations of impropriety in the initial action. He chose instead to withdraw and then to sit on those allegations in state court. He has attempted to bite this apple not just twice but three times. The doctrine of issue preclusion bars him from doing so.

AFFIRMED.